VIRGINIA METRONET, INC., and
Donna Grissom, Plaintiffs,

v.

The BOARD OF SUPERVISORS
OF JAMES CITY COUNTY,
VIRGINIA, Defendant.

No. CIV.A. 4:97CV83.

United States District Court,
E.D. Virginia,
Newport News Division.

Jan. 15, 1998.

M. E. Gibson, Jr., Tremblay & Smith, Charlottesville, VA, for plaintiffs.

Leo Paul Rogers, Jr., Deputy County Attorney, James City County, Williamsburg, VA, for defendant.

### MEMORANDUM OPINION AND ORDER

JACKSON, District Judge.

This matter comes before the Court on the parties' cross motions for summary judgment. On July 22, 1997 Plaintiffs Virginia Metronet, Inc. ("Metronet") and Donna Grissom ("Grissom") filed a complaint alleging that the Defendant, the Board of Supervisors of James City County ("the Board"), had violated Section 704 of the Telecommunications Act of 1996 ("the Act") when it denied the Plaintiff Metronet's request for a special use permit to construct a telecommunications tower on Plaintiff Grissom's property in James City County. Plaintiffs request relief in the form of a writ of mandamus to the Board, or in the alternative, declaratory judgment finding the denial of the permit void, and a mandatory injunction ordering the Defendant to approve the special use permit. Plaintiffs and Defendant each filed for summary judgment on November 17, 1997. The Court heard oral argument from the parties on December 18, 1997.

Upon consideration of the pleadings and briefs submitted by the parties, the argu-

ments of counsel, and the exhibits submitted by the parties, the Court finds that the Plaintiffs' motion shall be GRANTED IN PART, and the Defendant's motion shall be GRANTED IN PART.

## I. Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which grants the district courts original jurisdiction over "all civil actions arising under the ... laws ... of the United States." 28 U.S.C. § 1331. Plaintiffs' claims arise under § 704 of the Telecommunications Act of 1996, codified at 47 U.S.C. § 332(c)(7), which expressly permits "[a]ny person adversely affected by any final action or failure to act by a ... local government or any instrumentality thereof that is inconsistent with this subparagraph may ... commence an action in any court of competent jurisdiction." 47 U.S.C. § 332(c)(7)(B)(v).

## II. Standard of Review

A court may grant summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

In the instant case, both parties have conceded that no material facts are in dispute. Consequently, summary judgment is appropriate.

## III. Factual Background

Plaintiff Metronet is a telecommunications provider licensed by the Federal Communications Commission to provide wireless telecommunications services to the public in James City County and elsewhere. In the course of business, Metronet determined that in order to provide services to the public in the southwestern portion of James City County a telecommunications tower would be required in that region. Consequently, after some initial consultation with James City County Planning Staff ("Staff"), and a search of possible locations for such a tower, Metronet selected a site owned by Plaintiff Grissom as the proposed site for the new tower.

On April 18, 1996 Metronet formally applied for a special use permit to construct a tower at 3470 Brick Bat Road in James City County, Virginia, the property owned by Grissom. Defendant's Appendix of Exhibits ("D.A.") at 1. Review of the application by Staff began in a timely manner.

From April 18, 1996 to March 11, 1997, Plaintiffs' application was delayed from final decision on a number of occasions.[1] Deferral of the application occurred upon the formal request of the Plaintiffs,[2] by action of the Planning Commission, and by action of the Board.

During this deferral period, the proposed project underwent a number of modifications designed to meet the concerns of the Staff, who had originally recommended that the application be denied. D.A. at 20.32. Metronet made substantial changes to the project in order to comply with a number of policies relating to the siting of cellular towers developed after the Plaintiffs' application had been submitted. On March 11, 1997, Staff, being satisfied that the application "conforms to all aspects of the new policies regarding wireless communication facilities" recommended approval of the application to the Board. D.A. at 20.40. The Board, however, voted to again defer the application. D.A. at 21.17. Plaintiffs, at the direction and suggestion of the Board, conducted further visibility tests, and provided to Staff and Defendant a report detailing the results of an investigation of all possible sites in the region. D.A. at 10. All alternative sites were found to be unsuitable. *Id.*

On June 24, 1997, the Staff again recommended approval of the application, subject to certain conditions. D.A. at 20.45—20.52. Plaintiffs found the recommended conditions acceptable. Complaint at 35. Defendant Board met on June 24, 1997 and unanimously voted to deny the application. D.A. at 21.23.

---

1. *See, e.g.* D.A. at 21.1, 21.4, 21.9, 21.12, 21.14, 21.17.

2. At least twice, however, deferrals formally requested by Metronet were at the behest of Staff. D.A. at 19–8.

The minutes of the June 24, 1997 meeting reflect only the following in regard to the reasons the Board voted for denial:

> Individual Board members spoke to reasons for denial such as the visibility of the entire tower because it is sited in an open field; residents persistent in not wanting tower in neighborhood; and the belief that there is a more appropriate site for a tower in the vicinity.

D.A. at 13–2. No other explanation furnished by members of the Board exists in the record.

On July 22, 1997, Plaintiffs filed this action. Plaintiffs alleged Defendant violated three provisions of § 704 of the Telecommunications Act of 1996, codified at 47 U.S.C. § 332(c)(7), specifically § 332(c)(7)(B)(i)(II) (prohibiting regulations that prohibit the provision of wireless services); § 332(c)(7)(B)(iii) (requiring decisions by local authorities to be in writing and supported by substantial evidence contained in a written record); and § 332(c)(7)(B)(ii) (requiring local authorities to act on any request for authorization for wireless facilities within a reasonable period of time).[3]

On July 28, 1997, six days after the complaint was filed and thirty-four days after the application was denied, O. Marvin Sowers, Jr., Director of Planning for James City County, a member of Staff and one of the signatories to both Staff reports recommend-

ing approval of the application,[4] sent a letter to Plaintiffs allegedly detailing the reasons for the denial of the application. D.A. at 19.23

## IV. Discussion

■ As this Court discussed in *AT&T Wireless PCS, Inc. v. City Council of City of Virginia Beach*, 979 F.Supp. 416 (E.D.Va. 1997), the Telecommunications Act of 1996 is intended to create a national policy framework to accelerate the deployment of telecommunications technology. *Id.* at 423–24. The Act does so in part by placing certain substantive and procedural limitations upon the authority of local bodies to regulate and limit the construction of facilities for wireless communication services. *Id.* Three of these limitations are at issue in the instant case.

### A. Prohibiting the provision of cellular service.

■ Plaintiffs argue that Defendant's denial of the special use permit application violates 47 U.S.C. § 332(c)(7)(B)(i)(II), which states "The regulation of the placement ... of personal wireless service facilities by any ... local government ... shall not prohibit or have the effect of prohibiting the provision of personal wireless services." Plaintiffs argue that as this tower was intended to serve a previously unserved area, the denial of the requested permit has the effect of prohibiting

---

3. The relevant portions of § 704 of the Telecommunications Act of 1996 are:

 **(7) Preservation of local zoning authority**
 **(A) General authority**
 Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.
 **(B) Limitations**
 (i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof—
 (I) shall not unreasonably discriminate among providers of functionally equivalent services; and
 (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

 (ii) A State or local government ... shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time ... taking into account the nature and scope of such request.
 (iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record ...
 (v) Any person adversely affected by any final action ... by a State or local government or instrumentality thereof that is inconsistent with this subparagraph may, within 30 days ... commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis ...

 47 U.S.C. § 332(c)(7).

4. D.A. at 20.20, 20.49.

personal wireless service in that southwestern portion of James City County.

 This argument was considered and rejected by the Court in *AT&T Wireless PCS*, 979 F.Supp. 416. As the Court noted in *AT&T Wireless PCS*, the argument that Plaintiffs are espousing would be tantamount to the complete preemption of local authority in areas previously unserved by cellular services. 979 F.Supp. at 426–27. Congress did not intend to completely preempt local zoning authority when it instituted § 704 of the Act. *AT & T Wireless Services of Florida, Inc. v. Orange County*, 982 F.Supp. 856, 861–62 (M.D.Fla.1997). Instead, 47 U.S.C. § 332(c)(7)(B)(i)(II) is intended to limit general bans of personal wireless services, or policies which have the effect of prohibiting personal wireless services. *AT&T Wireless PCS, Inc.*, 979 F.Supp. at 426–27; *Orange County*, 982 F.Supp. 856, 860–61 (*citing AT&T Wireless PCS*).

Plaintiffs argue that this Court's decision in *AT&T Wireless PCS* was erroneous in that it was based upon the legislative history, and not upon the clear language of the statute. The plaintiffs in *AT&T Wireless PCS* espoused the same interpretation of this provision that the Plaintiffs in the instant case now advance. 979 F.Supp. at 426–27. As the Court noted in *AT&T Wireless PCS*, the Plaintiffs' interpretation of this provision is at odds with the plain text of 47 U.S.C. § 332(c)(7)(A), which expressly reserves the bulk of zoning authority to local governing bodies. *Id.* Even accepting *arguendo* that the Plaintiffs' interpretation of the language of § 332(c)(7)(B)(i)(II) is the "clear interpretation," where that interpretation conflicts with and contradicts the congressional intent to largely preserve local authority as expressly manifested in the plain language of the statute, and where that interpretation would render the other substantive and procedural requirements of the statute largely superfluous, recourse to the legislative history to clarify congressional intent is appropriate.

 Plaintiffs, however, are correct when they assert that the scope of § 332(c)(7)(B)(i)(II) is not limited to general prohibitions, moratoriums, bans, or other similarly expressly hostile limitations on the siting of personal wireless service facilities.[5] Policies that are facially neutral may have the effect of prohibiting service if those policies, despite being objectively administered in accordance with state and local law and the further requirements of the Telecommunications Act, have the necessary result that all possible sites in a given area will be rejected.[6] The Plaintiffs have not shown, however, that the policies created by the Defendant to govern the siting of cellular towers, had they been properly administered in accordance with the provisions of the Act and State law, would necessarily have resulted in the denial of any application in the area sought to be served. While Plaintiffs have offered evidence that the Board's application of their policies was hostile and therefore not supported by substantial evidence, they have not offered evidence that the policies themselves precluded the approval of any application. In other words, Plaintiffs' central argument is that the reasons given for the Board's decision are pretextual, not that the policies set out by the Board and followed by the Staff are themselves resulting in a prohibition of service.[7]

---

5. *E.g. Sprint Spectrum L.P. v. Jefferson County*, 968 F.Supp. 1457, 1468 (N.D.Ala.1997) (Moratorium declared by county had effect of prohibiting wireless service, in violation of § 332(c)(7)(B)(i)(II)); *see also Sprint Spectrum L.P. v. Town of Farmington*, 1997 WL 631104 (D.Conn.1997).

6. The rejection of a site which can be shown to be the only site available that meets all of the diverse criteria of each party is not an example of the prohibition of service by the policies of the governing board; rather, presumably it is a decision which cannot be supported by substantial evidence considered in light of those criteria, policies, and requirements.

Facially neutral policies may also have the effect of prohibiting service if those policies serve merely as a pretense to mask arbitrary decision making. *See United States Cellular Corp. v. Brd. of Adjustment of the City of Des Moines, Iowa*, LACL No. CL 000 70–195 (Polk County Dist. Ct., December 31, 1996) (unpublished) (discussing the possible use of vague and undefined criteria in siting policies to camouflage hostility and arbitrariness).

7. Indeed, when the Staff applied those policies to Plaintiffs' application, they found that the application should be approved. D.A. at 20.40, 20.47.

Therefore, as Plaintiffs have not alleged, nor shown that the denial of their application for a special use permit was the result of the application of a general ban or of a policy that has the effect of prohibiting the provision of wireless services, Defendant's motion for summary judgment on this count is **GRANTED.**

**B. Written decision, supported by substantial evidence contained in a written record.**

The Telecommunications Act requires that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). This statute requires governing bodies to produce a written decision, detailing the reasons for the decision and the evidence that led to the decision, and a written record of all the evidence before the governing body. *AT&T Wireless PCS, Inc.*, 979 F.Supp. at 428. These procedural requirements exist in order to provide for a robust judicial review of the decision. *Id.* at 427. The purpose of judicial review is to ensure that the decision is supported by substantial evidence, that is, that the decision is not arbitrary or capricious, is based upon the applicable objective standards and policies of the governing body, and that the requirements of the Telecommunications Act and State law are met. *Id.*

Plaintiffs assert that Defendant has failed to provide a written decision as mandated by § 332(c)(7)(B)(iii). Plaintiffs argue that as a matter of law, the minutes of the meeting in which Defendant rejected the application are insufficient to satisfy § 332(c)(7)(B)(iii). Moreover, Plaintiffs argue that the letter O. Marvin Sowers, a member of the Staff, sent to Plaintiffs six days after the filing of this action, and thirty-four days after the Defendant's decision, is

also insufficient as a matter of law. In the alternative, Plaintiffs argue that the alleged reasons for the Board's actions as stated by Mr. Sowers in his letter are unsupported by substantial evidence contained in the record.

Defendant conceded during oral argument that the minutes of the Defendant's June 24, 1997 meeting are insufficient to serve as the written decision required by § 332(c)(7)(B)(iii). The Court notes that under the rule of *AT&T Wireless PCS,* the minutes indeed cannot serve as the 'written decision' mandated by § 332(c)(7)(B)(iii). 979 F.Supp. at 427–28. Defendant argues, however, that the letter Mr. Sowers sent satisfies the requirements of § 332(c)(7)(B)(iii) for a written decision, and that the written decision is supported by substantial evidence contained in the record.

The Court finds that the letter Mr. Sowers sent to be insufficient to satisfy the requirements of § 332(c)(7)(B)(iii). Mr. Sowers is a member of the James City County Planning Staff but is not a member of the Board of Supervisors of James City County, the Defendant in this action.

The language of the statute, "[a]ny *decision by a State or local government* ... to deny a request ... *shall be in writing*" clearly presupposes that the body that makes the decision shall be the one to render it in writing. 47 U.S.C. § 332(c)(7)(B)(iii). It would undermine the ability of any court to adequately review that decision and address whether that decision was supported by substantial evidence, if the body that made the decision was not itself compelled to render its reasoning in writing. Simply put, the "State or local government or instrumentality" that made the decision has not rendered it in writing; therefore, the requirements of § 332(c)(7)(B)(iii) have not been met.

Defendant's argument that Mr. Sowers, as an employee of the county government, can render a written opinion on behalf of the Board is meritless.[8] The Board cannot ren-

---

8. This is not to say that the Board cannot have the assistance of Staff in fulfilling their duties; however, the Board itself, as the decision making body, must render a written decision. Staff members cannot presume to speak for the Board.

Nor can the Board simply rely upon the reasoning of its Staff to provide explanations and evidence for its decision. *Cf. Orange County,* 982 F.Supp. at 859-60.

der a decision and then rely upon its Staff to create written reasons in an attempt to comply with the requirements of § 332(c)(7)(B)(iii). *OPM–USA–Inc. v. Board of County Commissioners of Brevard County, Florida,* 1997 U.S. Dist. Lexis 16646 (M.D.Fla.). The fact that the letter was not created until six days after the filing of the instant case strongly suggests that the letter is pretextual.[9] To allow governing bodies to satisfy the requirements of § 332(c)(7)(B)(iii) by submitting 'reasons' after a challenge is mounted is to allow for the evasion of substantive review, contrary to Congressional intent.[10] Nor is there any indication that the letter reflects the true reasons and findings of the Board, save for the fact that certain stated reasons comport with the vague, conclusory statement reported in the minutes of the meeting.[11] This letter was prepared significantly after the actual event, by an individual who did not vote on the decision. In fact, there is no indication in the minutes that Mr. Sowers was even present at the meeting.[12] As in *OPM–USA–Inc.,* the circumstances give rise to an inference that the letter was created merely to provide sub-stance to the conclusory statements contained in the minutes of the meeting. *Id.*

■ Moreover, regardless of the authorship or timing of the letter the Court is not convinced that the July 28, 1997 letter has satisfied the minimum standard for a 'written decision' under § 332(c)(7)(B)(iii), as interpreted by this and other courts. "At minimum, local authorities must issue rulings in written form, setting out the reasons for the decision and *the evidence that led to the decision." AT&T Wireless PCS,* 979 F.Supp. at 428 (citations omitted)(emphasis added); *see also Orange County,* 982 F.Supp. at 859 (noting that citations to evidence would be required in a written decision). The Sowers letter consists mainly of conclusory statements, and does not explain which evidence led to the decision, nor does it explain why the Board was not persuaded by the obviously probative evidence offered by the Plaintiffs and by their own Staff.[13] Conclusory statements are of no use to a reviewing court. *AT&T Wireless PCS,* 979 F.Supp. at 428. Unless the Court can ascertain that the Board considered all relevant evidence, it cannot properly determine if the decision was

Defendant compares the July 28, 1997 letter to an earlier letter prepared by Mr. Sowers, dated March 25, 1997. Defendant's Reply Brief to Plaintiff's Motion for Summary Judgment, Attachment I. In the earlier letter, Mr. Sowers confirmed that the Board had granted an application Metronet submitted for a different, unrelated site. *Id.* Defendant argues that if the earlier letter was a sufficient written record of a decision of the Board, the later letter should be as well. The Court must first note that as the Telecommunications Act places no requirements on the contents, format, or justification of an *approval,* any comparison is legally irrelevant. It is interesting to note, however, that a number of significant differences exist between the letters. The letter of March 25, 1997 is merely a cover letter; it does not presume to speak for the Board. The letter of March 25, 1997 pertains to a decision rendered only fourteen days previously. And finally, the actual findings and intent of the Board is reflected in a detailed resolution, attached to the March 25, 1997 letter and signed by Robert A. Magoon, Jr., Chairman, Board of Supervisors of James City County.

9. The Court would also note that the letter was created thirty four days after the application was denied. As 47 U.S.C. § 332(c)(7)(B)(v) requires that any challenge to a decision be brought within thirty days, allowing Defendant to wait until the limitations period has expired to provide reasons for their action is to effectively preclude review of those decisions, contrary to Congressional intent.

10. It also lends itself to unnecessary expense and further delay, as unsuccessful applicants would be forced to file suit in order to ascertain if their applications had been properly considered.

11. As this letter is in direct contradiction to the written recommendations of the Staff, which were also signed by Mr. Sowers, this letter does not appear to reflect the findings of the Staff, much less the Board.

12. The minutes of the meeting reflect that all five Board members, the County Administrator, the County Attorney, and Mr. Gary A. Pleskac, a Planner with the County Planning Staff, and one of the signatories (along with Mr. Sowers) of the Staff report recommending approval of the application, were present at the June 24, 1997 meeting of the Board of Commissioners of James City County. The minutes do not reflect Mr. Sower's presence. D.A. at 13.

13. The letter makes one reference to the balloon (visibility) tests that were conducted; this appears to be the letter's only citation to evidence contained in the written record. D.A. at 19.23.

supported by substantial evidence. *Id.; see also Sterling Smokeless Coal Co. v. Tammy Akers*, 131 F.3d 438, 439-40 (4th Cir.1997) (discussing the need to ascertain if an agency has considered all relevant evidence before determining if a decision is supported by substantial evidence).

For all the foregoing reasons, therefore, the Defendant has failed to render a written decision, as mandated by 47 U.S.C. § 332(c)(7)(B)(iii), and is in violation of the Telecommunications Act of 1996.

■■■ Even assuming *arguendo*, however, that the letter is sufficient as a written decision, that decision is not supported by substantial evidence contained in the written record. In his July 28, 1997 letter, Mr. Sowers sets out five alleged reasons for the Board's action. The first four of these are largely aesthetic concerns; as noted in *AT&T Wireless PCS*, aesthetic concerns, without more, are an inappropriate basis for zoning regulation in the Commonwealth of Virginia. 979 F.Supp. at 428 n. 18 (*citing Board of Sup'rs of James City County v. Rowe*, 216 Va. 128, 145, 216 S.E.2d 199, 213 (1975)). The fifth stated reason was the alleged failure of the Plaintiffs to demonstrate that no alternative sites existed. D.A. at 19.23.

The first reason Sowers provided was that the proposed tower would be too visible from Brick Bat Road. D.A. at 19.23. This conclusory statement does not explain why the Board apparently discounted the Staff's finding in its final report that the buffer added to the Plaintiffs' proposal would "grow to a sufficient height to buffer the proposed tower along Brick Bat Road." D.A. at 12.2. The citations to evidence Defendant offered in its

brief are either duplicative of each other, largely refer to earlier versions of the proposal that did not include the buffer that Staff found sufficient in the final proposal, or do not adequately support the Defendant's position. This proffered reason is not supported by substantial evidence.

■■ The second reason Sowers stated was that the proposed project was not consistent with the characteristics of the two sites in other parts of the county previously approved by the Board. D.A. at 19.23. The Court cannot find any requirement under the zoning ordinances and guidelines applicable to this project that all such projects proposed by the same applicant must be substantially identical.[14] Nevertheless, no detailed information regarding the characteristics of the other sites exist in the record. For instance, there are no site plans and no photographs of the other sites contained in the record. This alleged reason, therefore, cannot be said to be supported by substantial evidence contained in the written record. What information that does exist merely illustrates that the site at issue in this case was believed to suffer from many of the same limitations as other proposed sites. *See* D.A. at 20.30 (Staff cited concerns with buffers, co-location, tower failure, and submittal requirements. Similar concerns, other than submittal requirements, were voiced about two other proposed locations; all three were recommended for denial at that time).[15]

The third alleged reason Sowers listed was that the tower would be unacceptably visible from nearby residences. D.A. at 19.23. Mr. Sowers stated that this had been demonstrated by the balloon tests [16] conducted by Plain-

---

**14.** In order be supported by substantial evidence, the proffered reasons must comport with the objective criteria in existence (i.e. zoning regulations, permit application policies, etc.). Governing bodies cannot simply arbitrarily invent new criteria in order to reject an application.

The Court notes that in the instant case, the Board enacted new guidelines and policies relating to telecommunications towers between the time Plaintiffs submitted their application, and the time a decision was rendered. As Plaintiffs voluntarily complied with the new regulations, the Court need not decide if it was proper to apply the new regulation's to an application submitted under the previous policies.

**15.** The outcome of the other proposals discussed in D.A. at 20.30 is not clear from the record; presumably the concerns voiced about the other applications were resolved by Staff through modification of the proposals and the impositions of conditions upon the proposed permits, as they were in the instant application. D.A. at 20.38, 20.45.

**16.** The balloon test involved launching a large balloon from the proposed site of the tower to a height equal or greater than the final height of the tower, and then attempting to observe the balloon from various locations, including neigh-

tiffs. *Id.* This is the only direct reference to evidence contained in the letter. The evidence does indicate that the tower would be visible from the nearby residences. *See* D.A. at 12.2; Plaintiffs' Appendix ("P.A.") at 4. The fact that the tower extends above the tree canopy, however, is unavoidable; the antennas must be placed above the canopy to provide proper signal promulgation. D.A. at 16.2. Recognizing this, the county's consultants concluded that while the upper portion of the tower would be visible from the residences, it "would not constitute a significant visual intrusion." D.A. at 5.4. Staff noted that the tower would be visible in their June 24, 1997 report recommending approval, but felt that the tower met the standards for tower visibility in existence at that time (although it did not meet a *draft* ordinance). D.A. at 12.2. From the evidence, the Court is unable to ascertain if the Board improperly applied a draft ordinance to the instant application. Clearly, however, this is a purely aesthetic consideration, and as such is insufficient as the sole basis for denial under Virginia law. *AT&T Wireless PCS,* 979 F.Supp. at 428 n. 18 (*citing Board of Sup'rs of James City County v. Rowe,* 216 Va. 128, 145, 216 S.E.2d 199, 213 (1975)).

The fourth reason Sowers proffered was that "[t]he proposed facility was not consistent with the rural character of the area and would be a significant change to the rural landscape along Brick Bat Road. The County's Comprehensive Plan strives to protect this character by encouraging structures to be screened from public roads and by minimizing their visibility over surrounding, mature trees." D.A. at 19.23. To the extent this statement discusses screening the tower from Brick Bat Road and the visibility of the tower above the trees, it is a reiteration of reasons one and three, *supra.* Otherwise, the proffered explanation appears to be a conclusory statement suggesting that the

tower was rejected because it conflicted with the county's Comprehensive Plan. Defendant's brief cites evidence confirming that generalized opposition to the project existed, and that the tower was indeed located on land identified as "Rural Lands" in the Comprehensive Plan. *See* D.A. at 17,21.11–.12, 23.7. Defendant fails to explain, however, why it discounted Staff's findings that the proposed project met the County's Wireless Communications standards, which are more specific policies designed to address projects of this type within the guidelines of the Comprehensive Plan. D.A. at 8, 12. Nor does Defendant address the findings of Staff, which note that "communications towers are not specifically encouraged or discouraged by the Comprehensive Plan." D.A. at 20.18. Examining the question of this proposed use at this specific location, the Staff noted that non-agricultural/non-forestal uses in areas designated 'Rural Lands' should be sited "away from agricultural/forestal uses, and away from open farm fields, and away from important agricultural/forestal soils and resources." *Id.* The Staff found, however, that this proposed tower "[would] not interfere with surrounding agricultural and forestal activity," that it was "away from open farm fields and intensive agricultural/forestal soils and resources," and would have a minimal effect on the agricultural activities on the Grissom property itself. *Id.* The Staff also notes that development in this part of James City County is already greater than that "typically found in Rural Lands." *Id.* While the Staff did not express a final opinion on the project's consistency with the Comprehensive Plan during this report, they failed to make a recommendation for reasons unrelated to the merits of this specific application.[17] D.A. at 20.18; *see also* D.A. at 20.4. Nevertheless, the Staff report strongly suggests that this use was consistent with the

boring houses, to determine the likely visibility of the proposed tower.

**17.** The Staff declined to make a recommendation on the grounds that they wished to delay any decision until a more comprehensive master plan for cellular tower siting could be developed. D.A. at 20.18. At a number of points in the record, Staff recommended deferral or delay of applications in order to further develop policies

regarding tower siting, in line with the "County's efforts to reduce the number of new towers and tower sites." D.A. at 19.7; *see also, e.g.,* D.A. at 20.20, 30. As the Court does not reach the question of unreasonable delay, *infra,* it will not address whether delays based upon this stated intention are tantamount to an unofficial moratorium.

characteristics of the area surrounding the proposed tower location.[18] As Defendant has not addressed this clearly probative evidence, its decision, if based upon this proffered reason, cannot be found to be based on substantial evidence.

The final explanation Sowers offered, and the only explanation not largely grounded in aesthetic concerns, was that Plaintiffs failed "to convincingly demonstrate that no other site alternatives existed out of approximately 80 parcels that were analyzed." D.A. at 19–23. However, Plaintiffs supplied a detailed report, contained in D.A. at 10.1, which examined 86 possible sites and provided reasons for declining all but the proposed site. Mr. Sower's letter offers no explanation why the Board discounted this evidence. No evidence of other, unconsidered sites exist in the written record. Defendant has suggested that the sites that had not been properly considered were those Metronet rejected for having been zoned "Agricultural and Forestal District" ("AFD"). Defendant is presumably relying upon an internal Staff report, contained in D.A. at 19.11, that asserted Staff felt it was "premature to discount AFD parcels as potential sites for communications towers." D.A. at 19.12. Zoning regulations related to AFD, however, clearly state that "[n]o Special Use Permit shall be issued except for agricultural, forestal, or other activities and uses . . . which are not in conflict with the policies of this district." D.A. at 19.21. The Staff recognized that this policy likely precluded the siting of towers on land zoned AFD. D.A. at 19.12. In contrast, the Grissom property is zoned A–1, General Agricultural District. D.A. at 20.45. General Agricultural District (A–1) zoning specifically permits communications towers up to 35 feet, and notes that "communications towers permitted by a special use permit by the board of supervisors may be in excess of 35 feet in height." D.A. at 18.1, 5. Metronet evaluated possible sites based upon the zoning ordinances as created and applied by the Defendant. They limited their search to parcels

zoned in such a way that special use permits for telecommunications towers could be obtained. D.A. at 10.1. The Plaintiffs cannot be penalized by the Defendant for following the rules and regulations Defendant itself created. As the Staff recognized, any change in those policies would have to come from the Board itself, and the Staff, along with the Board and the County Attorney's office would have to explore those possibilities. D.A. at 19.12, 13. Plaintiffs cannot be expected to guess which zoning ordinances Defendant is intent on enforcing, and which ones the Board is not serious about. Through its own action, Defendant has removed the AFD parcels from consideration for telecommunications towers; if the Board wishes now to permit towers upon these properties, the onus is upon the Defendant to do so, and the Plaintiff cannot be punished for following the law as it exists. If Defendant's denial was based upon the failure of Plaintiffs to consider AFD parcels, this reason is improper.

For the foregoing reasons, Defendant is in violation of 47 U.S.C. § 332(c)(7)(B)(iii), and consequently, Plaintiffs' motion for summary judgment in regards to this issue is **GRANTED**.

## C. Unreasonable delay in rendering a decision.

Plaintiffs assert that Defendant Board unreasonably delayed action on their application, in violation of 47 U.S.C. § 332(c)(7)(B)(ii), which requires that local authorities render a decision on such matters within a reasonable amount of time. *Westel–Milwaukee Co., Inc. v. Walworth County*, 205 Wis.2d 244, 556 N.W.2d 107, 109 (App.1996).

Plaintiffs urge that the fourteen month delay between the submission of the application and the final decision of the Defendant Board is unreasonable. While the Court is mindful that other courts have found shorter periods unreasonable, *see, e.g. Sprint Spectrum, L.P. v. Zoning Bd. of Appeals of*

---

**18.** Interestingly, in discussing a different application, Staff asserted that areas designated 'Rural Lands' were more proper for the location of telecommunications towers than areas designated residential, which were presumably more de-

veloped, and suggested that it was encouraging that the applicant consider such Rural Lands as an appropriate location for telecommunications towers. D.A. at 20.33.

*the Town of Guilderland,* 173 Misc.2d 874, 662 N.Y.S.2d 717, 719 (N.Y.Sup.Ct.1997) (finding ten month delay unreasonable), the Court is not prepared to find that, given the statute's requirement to "tak[e] into account the nature and scope of such request," 47 U.S.C. § 332(c)(7)(B)(ii), fourteen months is *per se* unreasonable. Clearly each situation must be independently examined. Evidence does exist in the record to suggest that the repeated delays in the processing of the application were largely due to the actions of the Staff, and may have been due to improper or unreasonable motives. D.A. at 19.8; *see also supra* n. 17. However, as the Court's finding that the Defendant is in violation of 47 U.S.C. § 332(c)(7)(B)(iii) disposes of the issues presented, the Court need not, and will not, decide this issue.[19]

## V. Remedy

 Plaintiffs have requested relief in the form of a writ of mandamus, or in the alternative, declaratory judgment finding Defendant's denial of a special use permit void and a mandatory injunction directing the Defendant to approve the Plaintiffs' application. Although the Defendant has not requested it, the Court must consider if remand for further consideration is appropriate. Given the extensive delay that has already occurred in the instant case, contrary to the intentions of the Telecommunications Act, *see AT&T Wireless PCS,* 979 F.Supp. at 431, the Court does not believe that remand would be appropriate. The Defendant has failed to provide a written decision, supported by substantial evidence as required by 47 U.S.C. § 332(c)(7)(B)(iii), despite having had the opportunity to do so. Defendant was clearly aware of the requirements of the Telecommunications Act, and failed to comply with them. *See* D.A. at 9.2; 20.20 (discussing the Act). Remand would simply further delay the resolution of this issue. *See AT&T Wireless PCS,* 979 F.Supp. at 430–31.

For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED** with respect to alleged violations under 47 U.S.C. § 332(c)(7)(B)(i)(II). Plaintiffs' motion for summary judgment is **GRANTED** with respect to violations under 47 U.S.C. § 332(c)(7)(B)(iii). It is **ORDERED** and **ADJUDGED** that the decision of the Board of Supervisors of James City County with respect to Case no. SUP–11–96, application for special use permit for property located at 3470 Brick Bat Road, is null and void.

It is further **ORDERED** that the Board of Supervisors of James City County shall approve the application for a special use permit, as proposed and detailed in the June 24, 1997 James City County Planning Staff report on Case No. SUP–11–96 and draft Resolution, contained in D.A. at 20.45–20.52, and including all conditions as detailed in such draft resolution, and shall grant such a special use permit within twenty (20) days of the date of this order. The Board of Supervisors of James City County shall remove any further impediments to the Plaintiffs' lawful construction of the communication tower.

The Court **DENIES** the request for attorney's fees, as the Telecommunications Act makes no provision for the award of such fees, and Defendant has not been shown to have acted in bad faith.

It is so **ORDERED.**

---

**19.** Evidence of improper or unreasonable delay, however, may be probative of other concerns before the Court. For instance, the amount of delay that has occurred in a given case may properly be considered by the Court in deciding an appropriate remedy for a violation of other provisions of 47 U.S.C. § 332(c). In addition, a failure to render a decision or an unreasonable delay in rendering a decision may be a violation of a separate section of the Telecommunications Act. *See, e.g. Jefferson County,* 968 F.Supp. at 1467–68 (finding defendant county's moratorium both an unreasonable delay and a prohibition of wireless services (among other violations)).