# STATE OF VERMONT

## ENVIRONMENTAL COURT

In re: Appeals of Rathburn, <u>et al.</u>

}
}
} Docket Nos. 130-8-01 Vtec
} and 149-9-01 Vtec
}
}

### Decision and Order on Cross-Motions for Summary Judgment

In 130-8-01 Vtec Appellants appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Hartford granting Appellee-Applicants Devon Mobile Communications and Charles and Susan Samsonow a conditional use permit to convert an existing windmill tower in the RL-5 zoning district to use for telecommunications antennas and to erect an equipment shelter within a 20' x 20' fenced area on the ground. In 149-9-01 Vtec Appellants appealed from a decision of the Planning Commission granting site plan approval for the equipment shelter at the site. Appellants are represented by Gerald R. Tarrant, Esq.; Appellee-Applicants are represented by Jon T. Anderson, Esq., and the Town is represented by Kimberlee S. Sturtevant, Esq. The parties have filed cross-motions for partial summary judgment on whether the proposal qualifies as a permitted or conditional use in the RL-5 zoning district, and whether site plan approval is required for any aspect of the project.

The following facts are undisputed unless otherwise noted.

The property at issue in the present case contains a single-family residence and a 100-foot-tall metal tower formerly in use to support a windmill blade assembly. Single-family dwellings are a permitted use in the RL-5 zoning district. The windmill was constructed in approximately 1984, under authority of a variance for the height of the structure issued by operation of law in December of 1983. It appears that in 1983 the structure fell into the use category of accessory use and accessory building to the permitted residential use of the property. See § 2-6 of the Zoning Regulations.

Appellants have applied for a conditional use permit and site plan approval to remove the windmill blades and to place at the top of the support tower one or more antennas for the purpose of receiving and transmitting signals to and from wireless telephones, and to place at the base of the tower the associated equipment in a shelter within a 20' x 20' fenced area. However, Appellants now argue that the proposal falls within the use category of " essential services;" that ' essential services' are allowed in every zoning district without a permit as they are not defined as a permitted or a conditional use in any district; that ' essential services' are also exempt from site plan approval; and that as the tower already has an exemption from the height limitation under § 3-2.1, it needs no additional approval and both appeals ought to be dismissed. The Town argues that even if Appellants' proposal falls within the use category of essential services, and therefore may be exempt from site plan review under § 4-1.1, buildings associated with it are still subject to the height limitation of § 3-2.1, which requires conditional use approval to exceed the 40-foot

height limitation for a new use. Appellants argue as well that the proposal does not fall within the definition of 'essential services,' both because the service provided is not 'essential' and because Appellee-Applicant Devon Communications is not a 'public utility;' and that the federal Telecommunications Act of 1996 does not either mandate approval or require consideration of this application as an 'essential service', contrary to representations made in Appellee-Applicants' initial application letter to the Town. Appellants seek judgment as a matter of law denying both applications.

The use category: 'essential services'

The Zoning Regulations define the use category "essential services" in Article VI as:

Underground or overhead gas, telephone, electric, steam, water or sewer collection, distribution or transmission systems maintained by public utilities or municipal or other governmental agencies; includes equipment and accessories used by such systems but not buildings.

The proposal fails to fall within the use category of "essential services" under the plain language of this definition for three distinct reasons.

First, the definition of 'essential services' only refers to physical infrastructure. It does not include any other non-physical transmission systems (such as radio or television, which existed in 1962 when the earliest zoning regulation was adopted in Hartford) under the terms of this definition. The definition instead describes physical systems of pipes or wires running either underground or overhead. Considered within the scheme of municipal zoning regulation, it makes sense that a zoning regulation would be designed to regulate particular buildings or uses in particular districts, but would allow the physical infrastructure (collection, distribution or transmission) systems to be extended to serve those buildings and uses without requiring a separate permit for the infrastructure extension.

Second, the definition of 'essential services' in this particular definition contains an exclusive list covering gas, telephone, electric, steam, water and sewer infrastructure. It does not contain a catchall "other similar services" category. Nor does it require an analysis of how 'necessary' such services are to citizens in general or to the users of these types of services in the particular area of the proposal.

Third, Appellee-Applicant Devon Mobile Communications, L.P. is not a public utility (nor a municipal or other governmental agency). A reading of its certificate of public good from the Public Service Board shows that neither its rates nor its entry into the market are regulated by the Public Service Board and that the certificate functions only to register the company and to protect consumers by informing the Board of the company's terms and conditions of service. See, Crown Communications v. Zoning Hearing Bd. of the Borough of Glensfield, 705 A. 2d 427, 431-32 (Pa. 1997); Building Commr. of Franklin v. Dispatch Communications of New England, Inc. 725 N.E.2d 1059, 1065-66 (Mass. App. 2000); Campanelli v. AT&T Wireless Services, Inc., 706 N.E. 2d 1267, 1271 (Ohio, 1999) (Pfeifer, J., dissenting). And see discussion of characteristics of 'public utility' in White Current Corp. v. Vermont Electric Coop, 158 Vt. 216, 227 (1992). To the contrary, the Board notes in Appellee-Applicant's certificate, at pages 3

to 4, that this is a " competitive market" in which customers have " the fundamental ability to choose a competitor if their existing provider does not meet their needs," and indeed, at footnote 10, states that " [a]lso, the service provider in this context is, by definition, not the sole provider of an essential service."

However, the fact that the proposal does not fall within the use category of " essential service" or any other permitted or conditional use in the RL-5 district does not mean that the application for the proposal must necessarily be dismissed, because the proposal is for the placement, construction or modification of personal wireless service facilities, regulated by the federal Telecommunications Act of 1996.

Requirements of the federal Telecommunications Act of 1996

Appellee-Applicant Devon Mobile Communications L.P.' s agent' s letter of April 30, 2001 stated that it owns an FCC license to provide wireless telecommunications services in Vermont, and identifies the site at issue in the present appeals as one selected in Appellee-Applicant' s " efforts to provide the mandated coverage." Appellants argue that the Telecommunications Act of 1996 does not mandate consideration of this particular site for this use, if the use is not otherwise allowed in this district. As this is the first zoning case regarding wireless telecommunications services to require a decision in Environmental Court since the expiration of Vermont' s moratorium (24 V.S.A. § 4407(18)) adopted to allow municipalities the time to adopt zoning regulations governing telecommunication towers, we must carefully analyze the requirements of the federal statute in this instance, in a town which has not adopted a zoning regulation explicitly governing telecommunications towers.

The federal Telecommunications Act of 1996 (" the Act" ) was intended " to promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." 360° Communications Co. of Charlottesville v. Board of Supervisors of Albemarle County, 211 F.3d 79, 85-86 (4th Cir. 2000) (quoting Pub. L. No. 104-104, 110 Stat. 56 (1996)). The Act attempts to strike a balance between this national purpose and the equally important principles of state and local control of land use.

One federal court noted the challenges of the particular balance attempted by the Act:

The statute' s balance of local autonomy subject to federal limitations does not offer a single " cookie cutter" solution for diverse local situations, and it imposes an unusual burden on the courts. But Congress conceived that this course would produce (albeit at some cost and delay for the carriers) individual solutions best adapted to the needs and desires of particular communities. If this refreshing experiment in federalism does not work, Congress can always alter the law.

Town of Amherst, N.H. v. Omnipoint Communications Enter., 173 F.3d 9, 17 (1st Cir. 1999)

In the section entitled " preservation of local zoning authority" (47 U.S.C. § 332(c)(7)) the Act recognizes in § 332(c)(7)(A)[1] that local zoning authority applies to the placement, construction, and modification of personal wireless service facilities, but goes on to recognize that the local

zoning authority must operate within certain limitations, set out in § 332(c)(7)(B). The only issues reserved entirely to federal regulation are the environmental effects of radio frequency emissions[2] (RFEs), to the extent that the facility complies with the Federal Communications Commission's regulations on RFEs. The FCC has jurisdiction of complaints that a municipality has regulated a facility on the basis of the environmental effects of RFEs.

The limitations most pertinent[3] to the issues presented by this appeal are found in § 332(c)(7)(B)(i)[4]: that the State or local government " shall not unreasonably discriminate among providers of functionally equivalent services" ((B)(i)(I)) and " shall not prohibit or have the effect of prohibiting the provision of personal wireless services" ((B)(i)(II)). These limitations, however, do not mean that a municipality is required to approve all applications for the placement, construction, and modification of personal wireless service facilities, regardless of their location, size, height or obtrusiveness within the municipality.

The ' unreasonable discrimination' limitation is relatively straightforward: any discrimination must be based on a legitimate reason. " [T]he Act explicitly contemplates that some discrimination among providers of functionally equivalent services is allowed. Any discrimination need only be reasonable." Sprint Spectrum, L.P., d/b/a Sprint PCS v. Willoth, 176 F.3d 630, 638 (2d Cir. 1999) (quoting AT&T Wireless PCS, Inc. v. City Council of Virginia Beach, 155 F.3d 423, 427 (4th Cir. 1998)). The Second Circuit examined the legislative history, which anticipated that the phrase:

" unreasonably discriminate among providers of functionally equivalent services" will provide localities with the flexibility to treat facilities that create different visual, aesthetic, or safety concerns differently to the extent permitted under generally applicable zoning requirements even if those facilities provide functionally equivalent services. For example, the conferees do not intend that if a State or local government grants a permit in a commercial district, it must also grant a permit for a competitor' s 50-foot tower in a residential district.

 Sprint Spectrum v. Willoth, 176 F.3d at 639 (quoting H.R. Conf. No. 104-458, at 208, reprinted in 1996 U.S.C.C.A.N. at 222). That is, " local governments may reasonably take the location of the telecommunications tower into consideration when deciding whether: (1) to require a more probing inquiry, and [whether] (2) to approve an application for construction of wireless telecommunications facilities, even though this may result in discrimination between providers of functionally equivalent services." Sprint Spectrum v. Willoth, 176 F.3d at 639 . Similarly, the Fourth Circuit in AT&T Wireless PCS, Inc. v. City Council of Va. Beach, 155 F.3d at 427, found that it was not unreasonable to discriminate between providers' proposals, based on the traditional bases of zoning regulation such as preserving the character of a neighborhood and avoiding aesthetic blight.

The 'prohibiting or have the effect of prohibiting' limitation poses a more difficult analytical problem, bearing in mind that " the plain text of 47 U.S.C. § 332(c)(7)(A), . . . expressly reserves the bulk of zoning authority to local governing bodies." Virginia Metronet, Inc. v. Board of Supervisors of James City County, Virginia, 984 F.Supp. 966, 971 (E.D.Va. 1998). Outright bans are eliminated, but the ' effect of prohibiting' provision nevertheless does not preempt local authority unless it essentially operates as a ban in a given area[5]. Thus, municipalities' regulations

will survive scrutiny best when they specifically provide for personal wireless service facilities as a regulated but allowed category of uses, as such a provision shows that the municipality has contemplated and addressed the problem of regulating this type of use. However, even municipal regulations which apply generally, for example, to ' commercial uses' or to ' towers' or ' antennas' may meet the requirements of the Act if they do not have the result of prohibiting all possible sites within the municipality for the construction of such facilities.

On this issue, the First Circuit in Town of Amherst, N.H. v. Omnipoint Communications Enter., 173 F.3d 9, 16 (1st Cir. 1999) (footnote omitted) exhorted the local board that it " must also face reality." The federal court pointed out, id. at 17, that:

Under federal law, the town can control the siting of facilities but . . . it cannot preclude wireless service altogether. Nor . . . can the town exhaust applicants by requiring successive applications without giving any clue of what will do the trick. Thus, it is in the common interest of the Board and [the applicant] to find ways to permit the siting of towers in a way most congenial to local zoning.

On the other hand, zoning policies that are " facially neutral" may nevertheless " have the effect of prohibiting service if those policies, despite being objectively administered in accordance with state and local law and the further requirements of the Telecommunications Act, have the necessary result that all possible sites in a given area will be rejected." Virginia Metronet, Inc. v. Board of Supervisors of James City County, Virginia, 984 F.Supp. 966, 971 (E.D.Va. 1998), and see In re Appeals of Vermont RSA Ltd. Partnership 1, d/b/a Bell Atlantic NYNEX Mobile (BANM), et al., Docket Nos. E96-192 and E96-205 (Vt. Envtl. Ct. 1997). The First Circuit describes the burden of an applicant invoking this provision as a " heavy one: to show from language or circumstances not just that this application has been rejected but that further reasonable efforts are so likely to be fruitless that it is a waste of time even to try." Town of Amherst, N.H. v. Omnipoint Communications Enter., Inc., 173 F.3d 9, 14 (1st Cir. 1999).

Each application must be addressed in the context of its own circumstances. As the Fourth Circuit describes:

the provision instructs that siting decisions may not be employed to deny wireless telecommunications service. This does not mean that the denial of a permit for a particular site amounts to the denial of wireless services because services can be effected from numerous sites in various combinations, sometimes not even within the area to be served. It follows, therefore, that case-by-case denial of permits for particular sites cannot, without more, be construed as a denial of wireless services.

360 ° Communications, 211 F.3d at 86. See also Omnipoint Communication, Inc. v. Board of Adjustment of the Township of Bedminster, 767 A.2d 488, 502 (N.J. Super. Ct. App. Div. 2001) (" by itself, the mere denial of plaintiff' s single application did not indicate that the ordinance violates the statute" ). " A local government may reject an application for construction of a wireless service facility in an under-served area without thereby prohibiting personal wireless services if the service gap can be closed by less intrusive means." Sprint Spectrum v. Willoth, 176 F.3d at 643 (citing Town of Amherst, N.H. v. Omnipoint Communications Enter., 173 F.3d

9, 14 (1st Cir. 1999). Applying these principles, the Fourth Circuit concluded in 360° Communications that evidence of the ability to provide service with six lower-elevation towers demonstrated that the denial of an application for a single mountaintop site did not violate subsection (B)(i)(II). See 360° Communications, 211 F.3d at 88.

Consequences in the present appeal

Under many zoning ordinances, if the ordinance does not incorporate a use category referring directly to ' telecommunication towers' or ' personal wireless service facilities' , such facilities may nevertheless be entitled to apply for a permit under a more general listed category such as ' commercial' use. Some ordinances also include what is sometimes referred to as a ' catchall' provision, for example, allowing a project not contemplated by the zoning ordinance to apply for a conditional use permit for ' other uses similar' to those listed as conditional uses, or ' other uses' for which the Board has found that such other category will not be detrimental to the community. The Hartford zoning ordinance does not appear to have such a general commercial category or ' other similar uses' category. When a zoning ordinance does not specifically provide for wireless facilities and cannot be read reasonably to allow them under general or ' other similar' uses, such an ordinance may have " the effect of prohibiting the provision of personal wireless services" in contravention of 47 U.S.C. § 332(c)(7)(B)(i)(II), unless there is a variance or waiver mechanism to allow them.

In many states, preemption is avoided in such circumstances by granting the applicant a so-called ' use variance,' to allow an application for the proposed project to be made as a conditional use in the particular district. See, e.g., Lawrence Wolf Capital Management Trust v. City of Ferndale, 128 F.Supp. 441, 449 (E.D. Mich. 2000) (applicant naturally applied for use variance where wireless facility otherwise was not allowed as a use); National Tower, LLC v. Frey, 164 F.Supp.2d 185, 187 (D. Mass. 2001); 172 (applying for use variance); Omnipoint Communication, Inc. Board of Adjustment of the Township of Bedminster, 767 A.2d 488, 500 (Superior Ct. of NJ App. Div. 2001) (discussing the purpose of the use variance with regard to wireless facilities).

It is possible that Vermont law would support an application for a use variance under the circumstances of this case, see In re Ray Reilly Tire Mart, 141 Vt. 330, 332 (1982) (" whether the variance sought be use or area, no distinction is permitted in the application of the statutory standards" ). The board or court would have to consider the five variance criteria in light of the federal Telecommunications Act of 1996, in determining, for example, whether the use variance was necessary to allow some site within the town to be developed in conformity with the zoning regulations as affected by the federal law. That is, the federal law may require that those elements of 24 V.S.A. § 4468(a) which ordinarily might preclude a use variance are preempted to the extent necessary to prevent the zoning regulations from otherwise violating 47 U.S.C. § 332(c)(7)(B)(i)(II). Town of Amherst, N.H. v. Omnipoint Communications Enter., Inc., 173 F.3d 9, 15-16 (1st Cir. 1999).

Because it does not fall within the use category of ' essential public services,' site plan approval for the proposal is required, as is approval of an exception to the height limitation for the new use. Because it does not fall within any other potentially approvable category in the RL-

5 district, we must determine whether it falls within any of the listed use categories in the Hartford Zoning Regulations for any other districts. If it does not, as the regulations do not appear to contain any general commercial category or any " other similar uses" category or any category for privately-operated radio or television antenna or other types of wireless broadcasting or receiving towers, the Town of Hartford zoning regulations may violate 47 U.S.C. § 332(c)(7)(B)(i)(II), unless a use variance is considered for this site or for other sites within the town. To come into compliance with the federal statute generally, the Town may also wish to amend its zoning or other ordinances to provide for the placement, construction or modification of personal wireless service facilities within the municipality.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that both Motions for Summary Judgment on Question 1 of the Statement of Questions are GRANTED in part and DENIED in part, as follows: The proposal does not fall within the use category of ' essential public services' or any other potentially approvable category in the RL-5 district, but it is not thereby automatically approved by operation of law, nor must the application automatically be denied.

We will hold a telephone conference TOMORROW, February 13, 2002, at 9:30 as already arranged with the three attorneys, to determine how to proceed to the next stage of inquiry in this case. We will expect to discuss whether to use the already-scheduled hearing days to take evidence as to the suitability of this site under the conditional use criteria, and whether to take evidence instead (or as well) on whether any other sites are available in other zoning districts within the town. We will also expect to discuss whether a use variance would have to be granted to allow this specific application (or any other application anywhere else within the Town of Hartford) to proceed, whether the property-specific variance criteria would be preempted by the federal Telecommunications Act of 1996, and whether the ZBA must rule in the first instance on any such variance request. The Town also should be prepared to address whether it is in the process of amending its zoning regulations, either within this district, or in other or all zoning districts of the Town, or by amending any definitions, or adding any use waiver provisions, to bring its regulations into compliance with the federal statute regarding telecommunications facilities.

Done at Barre, Vermont, this 12th day of February, 2002.


_____
Merideth Wright
Environmental Judge

## Footnotes

**1**   §332(c)(7)(A) - General authority:

Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

**2**   Subsections (iv) and (v) of §332(c)(7)(B) provide on this issue that:

(iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.

(v) * * * Any person adversely affected by an act or failure to act by a State or local government or any instrumentality thereof that is inconsistent with clause (iv) may petition the Commission for relief.

**3**   The other subsections of §332(c)(7)(B) regulate the local processing of applications, requiring that action on such applications be reasonably timely ((B)(ii)); that any local denials must be in writing and supported by substantial evidence contained in a written record ((B)(iii)); and that court review of any final action or failure to act be expedited ((B)(v)).

**4**   § 332(c)(7)(B) - Limitations

(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof__

(I) shall not unreasonably discriminate among providers of functionally equivalent services; and

(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

* * *

**5**   Of course, "once an area is sufficiently serviced by a wireless service provider, the right to deny subsequent applications becomes broader." Sprint Spectrum v. Willoth, 176 F.3d at 643. In that event, the unreasonable discrimination limitation of B(i)(I) would still apply, but the 'effect of prohibiting' limitation of B(i)(II) would no longer be applicable.