**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

In re: Appeal of Edward Stanak      }
and Joellen Mulvaney            }
                                 }    Docket No. 101-7-01 Vtec
                                   }
                                   }

### Decision and Order on Cross-Motions for Summary Judgment

Appellants appealed from a decision of the Development Review Board (DRB) of the City of Barre granting to Appellee-Applicant Independent Wireless One Leased Realty conditional use approval and site plan approval to install wireless communications equipment on the North Barre Manor building. Appellants are represented by Paul S. Gillies, Esq.; Appellee-Applicants are represented by Craig Weatherly, Esq., and the City is represented by Oliver L. Twombly, Esq. The parties have moved for summary judgment on all five of the questions in the amended statement of questions. Facts as stated in the following discussion are undisputed unless otherwise noted.

The elderly housing apartment building known as North Barre Manor is located in the Commercial zoning district. It received permits[1] from the Planning Commission in 1979 and from the Zoning Administrator in 1980 for an eleven-story building. It is a publicly-owned facility in use for public housing for the elderly and has more than four units. The structure housing the elevator machinery extends above the roof level of the building and will be referred to as the > elevator penthouse.= The building= s permit states that it is approximately 98 feet in height from the ground to the > highest point of roof.= The building is located in the Flood Hazard Area.

Appellee-Applicant proposes to install wireless communications transmitters and receivers on the sides of the elevator penthouse walls. The proposed equipment will not project above the elevator penthouse, but will occupy space above the maximum height limit for the district. The equipment is contained in flat panels measuring approximately 6 feet by 9 inches, which will project from the elevator penthouse walls approximately 6 inches. The radio frequency emissions from the equipment will comply with regulations issued by the Federal Communications Commission.

The federal Telecommunications Act of 1996 (A the Act@ ) was intended A to promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies.@ 360° Communications Co. of Charlottesville v. Board of Supervisors of Albemarle County, 211 F.3d 79, 85-86 (4th Cir. 2000) (quoting Pub. L. No. 104-104, 110 Stat. 56 (1996)). The Act attempts to strike a balance between this national purpose and the equally important principles of state and local control of land use.

One federal court noted the challenges of the particular balance attempted by the Act:

The statute= s balance of local autonomy subject to federal limitations does not offer a single A cookie cutter@ solution for diverse local situations, and it imposes an unusual burden on the courts. But Congress conceived that this course would produce (albeit at some cost and delay for the carriers) individual solutions best adapted to the needs and desires of particular communities. If this refreshing experiment in federalism does not work, Congress can always alter the law.

Town of Amherst, N.H. v. Omnipoint Communications Enter., 173 F.3d 9, 17 (1st Cir. 1999)

In the section entitled A preservation of local zoning authority@ (47 U.S.C. ' 332(c)(7)) the Act recognizes in ' 332(c)(7)(A)[2] that local zoning authority applies to the placement, construction, and modification of personal wireless service facilities, but goes on to recognize that the local zoning authority must operate within certain limitations, set out in ' 332(c)(7)(B).

Question 2 of the Statement of Questions: Whether the matter should be remanded to the DRB due to its not having considered evidence of the environmental effects of radio frequency emissions.

Under the Act, the only issues reserved entirely to federal regulation are the environmental effects of radio frequency emissions[3], to the extent that the facility complies with the Federal Communications Commission= s regulations on those emissions. The FCC has jurisdiction of complaints that a municipality has regulated a facility on the basis of the environmental effects of radio frequency emissions.

Therefore, the threshold inquiry for the DRB or for this court is only whether the proposal complies with the FCC= s regulations on radio frequency emissions. If it does comply, then the local process, whether before the DRB or this court, is precluded from making any further inquiry. The question of whether it does comply does not appear to be disputed by the parties. Although Appellants may wish to dispute whether the FCC= s regulations are sufficiently protective, and whether it would be better national policy to allow states or municipalities to be more protective, that policy debate may not be undertaken in the present zoning appeal. Summary Judgment is therefore granted to Appellee-Applicant on Question 2 of the Statement of Questions.

Question 3 of the Statement of Questions: Whether the use of the building for the facility is an accessory use or an accessory structure.

The parties have not argued that anything in the City of Barre Zoning Regulations appears to limit the use of a lot of land to a single use. For example, if a > professional office= is an allowed use in a particular district, then a landowner may apply for a permit for that use in a building that also houses a residential use. Thus, in the present case, application could have been made for the antenna panels as a second use on the property, if such antennas fell into a category of an allowed use in the Commercial zoning district, without any inquiry into whether they are an accessory use to the primary use of the building for a publicly-owned elderly housing project.

An Aaccessory use or building@ is defined in ' 5.2.03 as a A use or building customarily incidental and subordinate to the principal use or building and located on the same lot.@ The antenna panels at issue in the present case do not fall within the definition of building, and therefore we only examine whether they can be analyzed as an accessory use[4].

Appellee-Applicant argues that wireless communications equipment now is customarily located on > existing tall structures= and is therefore an accessory use to those structures. As a policy matter, it may be laudable that wireless technology has reached a point that no longer requires placement on very tall towers, and that wireless communications companies are seeking to locate equipment where possible on or within existing tall structures such as church steeples, farm silos, or tall buildings.

However, zoning regulations in general, and the Barre City Zoning Regulations in particular, classify uses on a functional basis, rather than as to the size or height or former use of the structure. Thus, in ' 5.2.05, multiple family dwellings are a use that falls within Class B, regardless of whether the structure is a former large single-family house or school adapted for use as apartment housing, and regardless of whether it is two stories high or ten stories high. In the Barre City Regulations, certain uses may fall within more than one class: for example, business offices or government offices fall within Class J and also Class M.

Under such a regulatory scheme, an accessory use is allowed because it falls into he same functional category as the primary use, not merely because it is small or even insignificant when compared to the primary use. Thus, radio dispatching equipment on top of a police station or fire station, or a private taxi dispatching company, might reasonably be analyzed as functionally related to the primary use.

By contrast, although Appellee-Applicant= s antenna panels are unobtrusive and may carry out a reasonable policy of seeking placement on existing structures, they are not functionally related to the use in the building: a publicly-owned elderly housing project. Antenna panels are not customarily incidental to publicly-owned elderly housing projects, nor is the antenna panel use subordinate to the use as a publicly-owned elderly housing project. The antennal panels are unrelated to the publicly-owned elderly housing project use and therefore cannot be treated as an accessory use. Summary Judgment is therefore granted to Appellants on Question 3 of the Statement of Questions.

Question 4 of the Statement of Questions: Whether the proposal is a A substantial improvement@ and whether cost is the only determinant.

The DRB apparently found that the proposal is not a A substantial improvement@ as the cost of the proposal is > less than half the value of the existing structure.@ This analysis is only relevant to the Flood Hazard Bylaws (' 5.33.07) and exempts the proposal from the Flood Hazard Area construction standards and the need for a Flood Elevation Certificate. Appellants do not dispute this exemption.

However, the test that must be applied by the DRB and hence by this Court, in connection with its analysis of the proposal under '' 5.1.04(c)(1) or (c)(2), is whether the proposal results in A increased floor area or increased use.@ Neither of these tests has anything to do with the cost or > substantiality= of the antenna panels. As Appellants moved for summary judgment on this question with regard to '' 5.1.04(c)(1) or (c)(2), summary judgment is denied to all parties on Question 4 of the Statement of Questions and Question 4 is hereby dismissed as moot.

Question 1 of the Statement of Questions: Whether the proposal constitutes the enlargement and/or alteration of a nonconforming use and/or a noncomplying structure.

The City of Barre= s Zoning Regulations are unusually restrictive in their treatment of nonconforming uses and noncomplying structures, compared to some other municipalities in Vermont. Many other Vermont municipalities= zoning regulations allow some degree of regulated expansion or alteration of nonconforming uses or noncomplying structures; some provide for expansion or alteration if approved by the DRB under conditional use standards, and if the expansion does not make the building more nonconforming. The Barre City Zoning Regulations only allow such alterations with DRB approval if it is for the purpose of A address[ing] considerations of energy, safety, environment and health@ and if it does not result in increased floor area or increased use. ' 5.1.04(c)(2).

Section 5.6.07(b) limits building height in nonresidential districts to 60 feet, notwithstanding the other provisions of that section. The building is therefore a permitted structure, but noncomplying under the current Regulations as to height.

Section 5.20.02 excludes public housing for the elderly from the approvable classes or categories of uses in the Commercial district. The use of the building is therefore a permitted use, but nonconforming under the current Regulations in this district.

Section 5.1.04(a) and (c) govern changes to nonconforming uses. Nothing in the regulations appears to prevent a conforming use from being added to a building housing a permitted though

nonconforming use. Wireless communications transmitters and receivers are a potentially conforming use[5] in the district under ' 5.1.07. Material facts are in dispute as to the elevation of the lot or the elevation of the location on the roof of this building where the antenna panels are proposed to be placed. Nothing about the proposal would otherwise alter or enlarge the permitted nonconforming use of the building as a publicly-owned elderly housing project.

Section 5.1.04(b) and (c) govern changes to a noncomplying structure. While the minor changes to the structure added by the proposal do not increase the noncomplying aspect of the structure, that is not the applicable standard under the City of Barre zoning regulations. If the antenna panels were to be added inside the elevator penthouse, they would not constitute an A alteration@ to the structure under the definition in ' 5.2.03. However, under that definition, they are an > addition to the structure, and therefore an > alteration= (albeit a very minor one) as the regulations do not require any element of > substantiality= for an alteration to come within this definition. As the alteration is within the height nonconformity, it does not comply with the standards of the district under ' 5.1.04(b), unless it otherwise receives approval under ' 5.1.07. Even though the alteration is slight, unlike many municipalities, the City of Barre= s Zoning Regulations do not contain any exemption for alterations that are minor or insignificant.

The DRB considered the application under ' 5.1.04(c)(2) as an alteration A to address considerations of energy, safety, environment and health.@ However those considerations must relate to the energy, safety, environmental or health problems of the nonconforming use or the noncomplying structure itself. Otherwise, the exception in ' 5.1.04(c)(2) could easily be applied to defeat the strict regulation of noncomplying structures and nonconforming uses set out in ' 5.1.04 as a whole. For example, a house could not be converted to a health clinic under this section, in a zoning district in which health clinics were not a conforming use, just because the function of a health clinic is to A address considerations of health.@ Similarly, a power generating plant could not be placed in a residential zoning district under this section, simply because the proposed use would A address considerations of energy.@

Accordingly, summary judgment is DENIED on Question 1 of the Statement of Questions, as material facts are in dispute as to whether the proposal could qualify for approval under ' 5.1.07 and therefore qualify as a complying alteration under ' 5.1.04.

Question 5 of the Statement of Questions: Whether federal law preempts the denial of this application.

The Act does not automatically preempt denial of this particular application. A municipality that makes no provision for wireless communications equipment in its zoning regulations or in a separate telecommunications ordinance, may find that an aspect of its ordinance is preempted by federal law. Such preemption, however, does not mean that all wireless communications equipment must be allowed in all districts without any municipal regulation. Rather, it may simply require that the proposal be allowed to apply for approval as a conditional use, either under an > other similar uses= category or through some sort of waiver mechanism such as a use variance. See analysis in Appeals of Rathburn, Docket Nos. 130-8-01 Vtec and 149-9-01 Vtec (Vt. Envtl. Ct., Feb 12, 2002).

The limitations most pertinent[6] to the issues presented by this appeal are found in ' 332(c)(7)(B)(i)[7]: that the State or local government A shall not unreasonably discriminate among providers of functionally equivalent services@ ((B)(i)(I)) and A shall not prohibit or have the effect of prohibiting the provision of personal wireless services@ ((B)(i)(II)). These limitations, however, do not mean that a municipality is required to approve all applications for the placement, construction, and modification of personal wireless service facilities, regardless of their location, size, height or obtrusiveness within the municipality.

The >unreasonable discrimination= limitation is relatively straightforward: any discrimination must be based on a legitimate reason. A [T]he Act explicitly contemplates that some discrimination among providers of functionally equivalent services is allowed. Any discrimination need only be reasonable.@ Sprint Spectrum, L.P., d/b/a Sprint PCS v. Willoth, 176 F.3d 630, 638 (2d Cir. 1999) (quoting AT&T Wireless PCS, Inc. v. City Council of Virginia Beach, 155 F.3d 423, 427 (4th Cir. 1998)). The Second Circuit examined the legislative history, which anticipated that the phrase:

A unreasonably discriminate among providers of functionally equivalent services@ will provide localities with the flexibility to treat facilities that create different visual, aesthetic, or safety concerns differently to the extent permitted under generally applicable zoning requirements even if those facilities provide functionally equivalent services. For example, the conferees do not intend that if a State or local government grants a permit in a commercial district, it must also grant a permit for a competitor= s 50-foot tower in a residential district.

Sprint Spectrum v. Willoth, 176 F.3d at 639 (quoting H.R. Conf. No. 104-458, at 208, reprinted in 1996 U.S.C.C.A.N. at 222). That is, A local governments may reasonably take the location of the telecommunications tower into consideration when deciding whether: (1) to require a more probing inquiry, and [whether] (2) to approve an application for construction of wireless telecommunications facilities, even though this may result in discrimination between providers of functionally equivalent services.@ Sprint Spectrum v. Willoth, 176 F.3d at 639 . Similarly, the Fourth Circuit in AT&T Wireless PCS, Inc. v. City Council of Va. Beach, 155 F.3d at 427, found that it was not unreasonable to discriminate between providers= proposals, based on the traditional bases of zoning regulation such as preserving the character of a neighborhood and avoiding aesthetic blight.

The > prohibiting or have the effect of prohibiting= limitation poses a more difficult analytical problem, bearing in mind that A the plain text of 47 U.S.C. ' 332(c)(7)(A), . . . expressly reserves the bulk of zoning authority to local governing bodies.@ Virginia Metronet, Inc. v. Board of Supervisors of James City County, Virginia, 984 F.Supp. 966, 971 (E.D.Va. 1998). Outright bans are eliminated, but the > effect of prohibiting= provision nevertheless does not preempt local authority unless it essentially operates as a ban in a given area[8]. Thus, municipalities= regulations will survive scrutiny best when they specifically provide for personal wireless service facilities as a regulated but allowed category of uses, as such a provision shows that the municipality has contemplated and addressed the problem of regulating this type of use. However, even municipal regulations which apply generally, for example, to > commercial uses= or to > towers= or > antennas= may meet the requirements of the Act if they do not have the result of prohibiting all possible sites within the municipality for the construction of such facilities.

In the present case, however, we do not reach that analysis because the Zoning Regulations do provide for wireless communication uses in ' 5.1.07, plus the Zoning Regulations do appear to allow wireless communication antennas to be placed within existing structures, such as church towers and silos, without being treated as an > alteration= of the structure as defined in ' 5.2.03.

Therefore, to find preemption in the present case for the present application, it would be necessary for the applicant to show that this particular location (rather than the general concept of locating such equipment on or in existing tall structures) is necessary to provide service in this area, and that service cannot be accomplished from other sites in other combinations. Material facts are disputed as to this issue.

Under the federal Act, each application must be addressed in the context of its own circumstances. As the Fourth Circuit analyzed the Act= s limitations on municipal ordinances:

the provision instructs that siting decisions may not be employed to deny wireless telecommunications service. This does not mean that the denial of a permit for a particular site amounts to the denial of wireless services because services can be effected from numerous sites in various combinations, sometimes not even within the area to be served. It follows, therefore, that case-by-case denial of permits for particular sites cannot, without more, be construed as a denial of wireless services.

360 ° Communications, 211 F.3d at 86. See also Omnipoint Communication, Inc. v. Board of Adjustment of the Township of Bedminster, 767 A.2d 488, 502 (N.J. Super. Ct. App. Div. 2001) (A by itself, the mere denial of plaintiff= s single application did not indicate that the ordinance violates the statute@ ). A A local government may reject an application for construction of a wireless service facility in an under-served area without thereby prohibiting personal wireless services if the service gap can be closed by less intrusive means.@ Sprint Spectrum v. Willoth, 176 F.3d at 643 (citing Town of Amherst, N.H. v. Omnipoint Communications Enter., 173 F.3d 9, 14 (1st Cir. 1999).

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Summary Judgment is GRANTED in favor of Appellants on Questions 3 and 5 of the Statement of Questions, that Summary Judgment is GRANTED in favor of Appellee-Applicant on Question 2 of the Statement of Questions, that Summary Judgment is DENIED on Question 1 of the Statement of Questions as material facts are in dispute; and that Question 4 of the Statement of Questions is dismissed as moot.

We will hold a telephone conference on March 15, 2002 at 1:30 p.m. to discuss the scheduling of a hearing on the remaining merits of this application. The parties should be prepared to address whether the Appellee-Applicant has other sites pending or approved within the City of Barre that could affect the hearing on or the analysis of this application.

Done at Barre, Vermont, this 28th day of February, 2002.

_____
Merideth Wright
Environmental Judge

---

## Footnotes

[1] The parties did not provide the zoning regulations in place at the time those permits were granted; nor those applicable to the present application. For the purposes of addressing the present motions, we have used a copy of the regulations dated October 15, 2000 borrowed from another file. As soon as possible the parties shall provide a (single) agreed copy of the regulations for filing in connection with the summary judgment motions in this case and shall inform the Court as soon as possible if they disagree as to the correct edition applicable to this case.

[2] §332(c)(7)(A) - General authority:

Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

[3] Subsections (iv) and (v) of §332(c)(7)(B) provide on this issue that:

(iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the (v) * * * Any person adversely affected by an act or failure to act by a State or local government or any instrumentality thereof that is inconsistent with clause (iv) may petition the Commission for relief.

[4] It is not clear to the Court how it assists Appellee-Applicant to define the proposed panels as an accessory use to the publicly-owned elderly housing use on the property. Because that use is nonconforming, any accessory use would fall into the same nonconforming category and have to be analyzed as a nonconforming use under §5.1.04.

[5] While the City of Barre Zoning Regulations would more successfully withstand scrutiny under the Telecommunications Act of 1996 if they specifically addressed wireless communications facilities, they do at least provide for wireless transmission towers and related uses in §5.1.07.

[6] The other subsections of §332(c)(7)(B) regulate the local processing of applications, requiring that action on such applications be reasonably timely ((B)(ii)); that any local denials must be in writing and supported by substantial evidence contained in a written record ((B)(iii)); and that court review of any final action or failure to act be expedited ((B)(v)).

[7] § 332(c)(7)(B) - Limitations

(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof__

(I) shall not unreasonably discriminate among providers of functionally equivalent services; and

(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

* * *

[8] Of course, "once an area is sufficiently serviced by a wireless service provider, the right to deny subsequent applications becomes broader." Sprint Spectrum v. Willoth, 176 F.3d at 643. In that event, the unreasonable discrimination limitation of B(i)(I) would still apply, but the 'effect of prohibiting' limitation of B(i)(II) would no longer be applicable.