OMNIPOINT HOLDINGS, INC., a Delaware Corporation d/b/a/ Voicestream Wireless Plaintiff,

v.

CITY OF SOUTHFIELD, a Michigan Corporation and City of Southfield City Council, Defendants.

No. 01–CV–72482.

United States District Court, E.D. Michigan. Southern Division.

April 30, 2002.

Jonathan R. Crane, Rochester Hills, MI, E. Powell Miller, Mantese, Miller, Troy, MI, for Omnipoint Holdings, Inc., plaintiff.

Gerald A. Fisher, Secrest, Wardle, Farmington Hills, MI, for City of Southfield and Southfield City Council, defendants.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

This matter is before the Court on the parties' cross-motions for summary judgment, filed on January 7, 2001. Response and reply briefs have been filed by all parties. A hearing was held on March 11, 2002. For the following reasons, Defendants' Motion to Dismiss and for Summary Judgment is **GRANTED.**

### I. FACTS

Plaintiff Omnipoint Holdings d/b/a VoiceStream Wireless ("VoiceStream") is engaged in the business of providing wireless personal communication system services and serves numerous wireless telephone and other customers in southeastern Michigan, as well as around the country. As part of its service, it needs to construct antenna towers at various locations in order to provide uninterrupted wireless services to its customers. Plaintiff seeks to build a 150–foot monopole antenna tower in the City of Southfield, Michigan to cover

a gap in coverage that prevents VoiceStream from effectively serving its customers and competing in the Metropolitan Detroit market.

On July 12, 2000, Plaintiff submitted an application for a site plan/special use review for the purpose of building a tower in the rear yard of a single family home located at 17390 West 10 Mile Road. The property was owned by and leased from Stuart F. Martin (the "Martin property" or "Martin site"). The Martin property, as well as properties directly north, east, and south, is located in the R–E Single Family Residential zoning districts, which consists of low-rise residential homes.

On October 18, 2000, the Planning Commission, by a vote of 5–0, recommended that Plaintiff's application for special use and site plan review be denied. On January 16, 2001, the City Council's Site Plan Committee met to review Plaintiff's application. The Committee discussed with Plaintiff the possibility of placing the tower at other locations. The Plaintiff indicated to the Committee that, based on costs, other locations did not appear to be possible. The matter was referred to the City Council for final consideration.

On February 26, 2001, the Southfield City Council met to consider Plaintiff's application and the Planning Commission's and Council's Site Plan Recommendation. At the hearing, Nicholas Banda, Director of Planning and Business Resource Development for the City of Southfield, explained the issues considered by the Planning Department during its review of Plaintiff's application and the reasons why the Department recommended that Plaintiff's application be denied. Mr. Banda also read a letter from the City's telecommunications consultant stating that Plaintiff had failed to demonstrate that the proposed site/configuration was the only alternative that exists for the effective implementation of its system. Based on this information, the City Council passed a resolution 7 to 0 to deny Plaintiff's application. In the resolution, the Council articulated eight (8) grounds for denying the application.

At the same time that Plaintiff was seeking approval to build its tower on the Martin property, Plaintiff's representative held exploratory discussions with various City officials, including officials from the City Planning Department, to discuss the possibility of leasing a portion of property located within the Robbie Gage Memorial Park ("Park") to Plaintiff so that it could build its tower. The Park is solely owned by Defendant City of Southfield. It is undisputed that all discussions between Plaintiff's and Defendants' representatives occurred with the understanding that any transfer of a property interest in the Park was solely up to the City Council.

On November 30, 2000, Mr. Banda sent a letter to Jonathan R. Crane, the attorney that represented VoiceStream in the proceedings before the City of Southfield. The letter informed Mr. Crane of the terms the City would agree to if VoiceStream were to locate its proposed tower on the Park property: "The rent structure would be as follows: Fifty Thousand Dollars ($50,000) up-front, with a yearly rental of $8,700 for years one through five; $9,000 for years six through ten; $11,000 years eleven through fifteen; $12,000 years sixteen through twenty and $13,5000 years twenty one through twenty five." See Pl.'s Resp. Br. at Ex. 4. Because of the costs associated with the Park property and the deed restriction, VoiceStream declined to pursue the property at that time. See Defs.' Resp. Br. at Ex. 10; Pl.'s Br. at 5–6.

Upon the City Council's denial of Plaintiff's application on February 26, 2001, Plaintiff continued to seek out the possibility of placing a tower on the Park property

and filed a site plan/special use review application for the purpose of placing the tower on the Park property. On May 2001, City officials realized that the Defendant City Council would not approve a lease for the Park location. On June 4, 2001, the City Attorney sent a letter notifying Plaintiff's representatives that because the City, as owner of the Park, would not approve a lease for the Park property, the hearing to consider Plaintiff's application would be cancelled.

On July 3, 2001, VoiceStream filed the instant two-count suit. Count I alleges violations of the Telecommunications Act of 1996 (the "Act"), 47 U.S.C. § 332, et. seq. Count II claims that Defendants violated 42 U.S.C. §§ 1983 and 1988. Plaintiff's § 1983 claim alleges that Defendants' conduct deprived VoiceStream equal protection of the laws in violation of the Fourteenth Amendment of the United States Constitution. See Compl. at ¶ 57. Plaintiff's § 1983 claim also alleges that Defendants deprived VoiceStream of rights, privileges and immunities secured by the Constitution and laws of the United States. Id. at ¶ 58.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for a motion to dismiss for failure to state a claim upon which relief can be granted. This type of motion tests the legal sufficiency of the plaintiff's Complaint. *Davey v. Tomlinson*, 627 F.Supp. 1458, 1463 (E.D.Mich.1986). A court takes the factual allegations in the Complaint as true when evaluating the propriety of dismissal under FED. R. CIV. P. 12(b)(6). *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 512 (6th Cir.2001); *Hoeberling v. Nolan*, 49 F.Supp.2d 575, 577 (E.D.Mich. 1999). Further, the court construes the complaint in the light most favorable to the plaintiff, and determines whether it is beyond a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Varljen v. Cleveland Gear Co., Inc.*, 250 F.3d 426, 429 (6th Cir.2001).

If matters outside the pleading are presented in a FED. R. CIV. P. 12(b)(6) motion and considered by the court, the motion shall be treated as one for summary judgment under FED. R. CIV. P. 56(b) and disposed of as provided thereunder. *Talley–Bey v. Knebl*, 168 F.3d 884, 885 (6th Cir. 1999); *Vashi v. Charter Township of West Bloomfield*, 159 F.Supp.2d 608, 612 (E.D.Mich.2001). Rule 56(c) states that summary judgment should be entered only where "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Moreover, the court need not accept as true legal conclusions or unwarranted factual inferences. *Hoeberling*, 49 F.Supp.2d at 577.

Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.* A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Michigan real property and contract law is relevant to this case.

## III. ANALYSIS

Defendants argue that summary judgment in their favor is appropriate as to the Martin property because Plaintiff failed to file a claim within 30 days of the City approving its official City Council minutes which set forth the official reasons for denying Plaintiff's Application to build an antenna tower. *See* Defs.' Br. in Supp. of Mot. to Dismiss and for Summ. J. at 3–5 (hereinafter "Defs.' Br."). Defendants further argue that Plaintiff does not have a property interest in the Park property and therefore does not have standing to bring a claim against the City. *Id.* at 6–8. Finally, Defendants contend that because Plaintiff does not have a property interest in the Park site, it cannot prevail on a claim that the City violated Plaintiff's equal protection rights. *Id.* at 8–9.

Plaintiff responds that its Complaint is timely filed and that Defendants should be estopped from asserting the statute of limitations defense. Plaintiff further argues that it has standing under the Act because: (1) it was adversely affected by Defendants final action; (2) Plaintiff has an enforceable interest in the Park site; and (3) Defendants' delays tolled the time for Plaintiff to file suit. *See* Pl.'s Resp. to

Defs.' Mot. to Dismiss and for Summ. J. at 4–17 (hereinafter referred to as "Pl.'s Resp. Br.").

Plaintiff advances numerous arguments supporting its Motion for Summary Judgment. Each essentially states that the record lacks substantial evidence to support the City's denial of VoiceStream's Application. *See* Pl.'s Mot. for Summ. J. and Br. in Supp. at 11–25 (hereinafter referred to as "Pl.'s Br."). Defendants assert that substantial evidence exists in the record to support the City's finding that "the placement of the tower on the Martin property was not harmonious with the surrounding area and the placement of the tower would be demonstrably injurious to the existing and proposed neighborhood pursuant to sections 55.58D(1)(A) and D(1)(B) of the zoning ordinance." *See* Defs.' Resp. to and Br. Opposing Pl.'s Mot. for Summ. J. at 13 (hereinafter referred to as "Defs.' Resp. Br.").

### A. Statute of Limitations and the Martin Property

The Telecommunications Act of 1996 states in pertinent part:

> Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction.

47 U.S.C. § 332(c)(7)(B)(v). The clear and unambiguous language of the Act indicates that Plaintiff's claim is timely only if it was filed within thirty days of Defendants' "final action" pertaining to VoiceStream's Site Plan Applications. *See Laurence Wolf Capital Mgmt. Trust v. City of Ferndale*, 176 F.Supp.2d 725, 727 (E.D.Mich. 2000).

### 1. VoiceStream's Suit was not Timely Filed

■ In arguing that its Complaint was timely filed, VoiceStream explains that its engineers determined that to minimize or eliminate the coverage gap, it would be necessary to add a wireless antenna in the area of Ten Mile and Inkster Roads. VoiceStream considered this area to be its "Search Ring." According to Plaintiff, VoiceStream considered various properties within its Search Ring upon which to locate its antenna. Among these areas was the rear yard of a single family home owned by Stuart A. Martin, located at 17390 West Ten Mile Road (the "Martin property"). Another was an undeveloped city-owned park denominated the Robbie Gage Memorial Park (the "Park"), which was located 850 feet north of the Martin property.

According to Plaintiff, on July 12, 2000, VoiceStream submitted its application to build a facility within the Search Ring, which included *both* the Martin and Park properties. *See* Pl.'s Br. at 6. VoiceStream argues that the relevant "final action," therefore, did not take place until the City denied Plaintiff's Site Plan application as to each property. Defendants acknowledge that Plaintiff applied for a special use permit for each of the properties. However, Defendants contend that the properties were sought separately and that the City considered Plaintiff's application as to these properties separately. Specifically, Defendants claim that Plaintiff initially only submitted a site plan/special use review application to the City to obtain approval to build its antenna in the rear yard of the single-family home located on the Martin property. *See* Defs.' Br. at 1. Defendants contend that upon denial of this application, Plaintiff had thirty days to bring suit under the Act as to this property.

The crux of Plaintiff's argument is that "[t]he City is improperly attempting to sever Plaintiff's two proposed sites as two separate and distinct requests." *See* Pl.'s Resp. Br. at 7. Plaintiff argues that the Martin and Park properties were "part of the same proposal." *See* Pl.'s Resp. Br. at 7. The key issue, therefore, is whether Plaintiff applied for a special use permit to construct an antenna on one property at a time, or whether Plaintiff applied for consideration of the special use permit on the Martin and Park properties in tandem. This Court concludes that the former scenario represents Plaintiff's course of action.

A review of the documents submitted by the parties reveals that the July 12, 2000 application only requested consideration of the Martin property. *See* Defs.' Reply to Pl.'s Resp. to Mot. to Dismiss and for Summ. J at Ex. A (hereinafter referred to as "Defs.' Reply Br."). The July 12, 2000 application makes no mention of the Park property and in no way indicates an intention on behalf of Plaintiff to request that the City consider the Martin and Park properties simultaneously or as part of the same proposal. While Defendants admit that "[a]t the same time that it was seeking approval to place its tower on the Martin property, Plaintiff also had discussions with City officials regarding locating the tower at the Robbie Gage Memorial Park," *see* Defs.' Br. at 7, Plaintiff did not submit an application for consideration of the Park property until May 1, 2001, after the City denied the Site Plan Application for the Martin property.

This Court concludes that because separate applications were filed on the Martin and Park properties, the thirty day statute of limitations began running as to the Martin property when a "final action" was made by the City as to Plaintiff's Site Plan Application for said property. *See Lau-*

*rence Wolf Capital Mgmt. Trust,* 176 F.Supp.2d at 728. This conclusion is supported by the fact that the Site Plan Application requires the signature of both the property owner and the tenant. The July 12, 2000 application contains only the signatures of Stuart Martin, the owner of the property, and Gary .LaMott, a representative of VoiceStream. The conspicuous absence of any description of the Park property, as well as the lack of any signature of a representative of the City of Southfield, indicates that the parties were not contemplating concurrent consideration of the Martin and Park properties.

Further support for this conclusion is found in the minutes of the City Council Site Plan Committee wherein Plaintiff informed Defendants that, based on the costs associated with the Park property ánd a deed restriction disallowing the placement of the tower on said property, VoiceStream had no interest in pursuing a lease and special use application at that time. *See* Defs.' Resp. Br. at Ex. 10; *see also* Pl.'s Br. at 5–6. At the February 26, 2001 City Council meeting, Plaintiff reiterated this position to Defendants, stating that VoiceStream had made a business decision not to pursue the Park site because of the costs. *See* Defs.' Resp. Br. at 8; *see also* Defs.' Resp. Br. at Ex. 18, p. 17. Accordingly, this Court finds that the Martin and Park properties were separately sought after and that Plaintiff had thirty days from each "final action" to file suit with regard to both properties individually.

The Act does not define "final action." However, in *Laurence Wolf Capital Mgmt. Trust,* the court considered the meaning of the term. In *Laurence Wolf Capital Mgmt. Trust,* the plaintiff owned an office building located in a Zoning District designated for retail and office use. The plaintiff and AT & T Wireless Services ("AT & T") entered into a lease agreement by which AT & T would place a wireless-communication antenna on top of plaintiff's building. Because the contract was contingent upon AT & T's successful bid to secure permission to build the tower, AT & T applied for a use variance from defendant.

The defendant, the City of Ferndale, held two public hearings of its zoning board to discuss the issue. On January 27, 2000, defendant provided notice of its denial of the variance in a letter to plaintiff. Plaintiff subsequently filed suit in Michigan state court. The Michigan court issued an opinion and order holding that defendant had not "supported its decision by evidence on the record," and remanded the matter to defendant's Board of Zoning Appeals for a statement of the grounds upon which it had denied AT & T's request for a use variance.

On remand, the Board held a hearing at which time it placed its reasons for denying the variance on the record. The Board then corrected and approved the minutes of this hearing on May 16, 2000. On June 13, 2000, plaintiff instituted a suit in federal court alleging that defendant's acts were in violation of the Telecommunications Act of 1996.

The defendant moved to dismiss on the ground that the court lacked subject matter jurisdiction, arguing that the plaintiff's complaint was untimely based on the thirty-day statute of limitations found in 47 U.S.C. § 332(c)(7)(B)(v). Defendant argued that its January 27, 2000 denial of plaintiff's variance constituted the final action for the purposes of the Act. Plaintiff argued that defendant's final action was actually its approval of the Zoning Board's minutes on May 16, 2000 that the suit was filed within thirty days of that final action, and that the court had jurisdiction over plaintiff's claim.

The court agreed with plaintiff. Looking to the legislative history of the Act, the

court concluded that under the Act, "there can be no final action by the local permitting body until there is a written decision." *Id.* at 727. The court further concluded that the January 27, 2000 denial did not constitute the final action required under the Act because it was not supported by evidence on the record. Instead, the court determined that "[t]he 'final action' that Defendant took regarding AT & T's application for a zoning variance [was] on May 16, when the Board of Zoning Appeals approved the official reasons for its denial of AT & T's application for a variance." *Id.* at 728.

In the instant case, the City Council considered and ruled on Plaintiff's application at its February 26, 2001 meeting. The Council articulated eight reasons for denying Plaintiff's application. The minutes which provide the official reasons for denying Plaintiff's application were approved by the City Council on April 9, 2001. Plaintiff had thirty days from this date to file suit. *See* 47 U.S.C. § 332(c)(7)(B)(v). Plaintiff did not file this claim until July 3, 2001. Plaintiff's claim as to the Martin property is, therefore, untimely.

In an effort to circumvent the statute of limitations, Plaintiff notes that during the pendency of the City's consideration of Plaintiff's special use application for the Martin property, Defendants recommended to Plaintiff that it consider placing its antenna on the city-owned Park property. In denying Plaintiff's application as to the Martin Property, the City noted that Plaintiff had not proffered an acceptable explanation why the Park property would not be suitable. Plaintiff, therefore, argues that it could not have filed suit sooner because "[t]he City previously refused to allow VoiceStream to locate the proposed tower on the Martin Site based on the perceived availability of the Park." *See* Pl.'s Resp. Br. at 5. Because the parties

were still engaged in "ongoing discussions, negotiations, work sessions, and public hearings," Plaintiff contends that the final action occurred on June 4, 2001, when these interactions terminated. *Id.* at 6. Plaintiff's contentions lack merit.

First, the City only *partially* based its decision to deny VoiceStream's request for a special use permit on the fact that the Park property was available. This the City was entitled to do. *See* SOUTHFIELD, MICH., CODE ch. 45, art. IV, § 5.58D(1)(e) ("Applicants shall demonstrate why a site or sites recommended by the City are not appropriate."). Pursuant to § 5.58, the City also considered several other factors in denying the special use permit for the Martin property. *See generally* Defs.' Resp. Br. at 13–15 (citing City Council minutes). Based on these considerations, the City articulated seven (7) other reasons for denying Plaintiff's application. *See* Defs.' Br. at Ex. 4, pp. 13–14.

Plaintiff contends that the City's proffered reasons for denying the special use permit lack substantial evidence. Specifically, Plaintiff argues that the "opinions of Defendants' 'experts' should be disregarded because, at most, they simply restated the requirements of the ordinance, and attempted to create a burden more stringent than required under the Act." *See* Pl.'s Reply Br. in Supp. of its Mot. for Summ. J. at 2 (hereinafter referred to as "Pl.'s Reply Br."). The Court need not address this issue because it finds that Plaintiff's claim as to the Martin property is barred by the statute of limitations.

That the parties were negotiating until June 4, 2001 regarding the Park property is irrelevant to the Martin property as there is no indication that these properties were being considered as alternative sites in the *same* proposal. To the contrary, the documents submitted by the parties, including the Record of Proceedings sub-

mitted by stipulation of all parties, indicate that the Martin site was the only property officially before the City Council prior to May 1, 2001.

The Court acknowledges the dilemma Plaintiff faced in April 9, 2001, when the City Council approved the reasons for denying Plaintiff's application for use of the Martin property. Filing suit over the Martin property during the pendency of ongoing discussions regarding the Park property "would have [likely] derailed any conciliatory efforts by Plaintiff to construct a wireless tower." *See* Pl.'s Resp. Br. at 8. While Plaintiff's contention that this course of action would be "in contradiction to the Act's purpose of increasing competition and fostering the establishment of wireless towers," this Court finds the statute is clear and unambiguous. It requires an aggrieved party to bring suit within thirty (30) days from an adverse final action under the Act and makes no provisions for a situation such as that faced by Plaintiff. VoiceStream did not file suit within thirty (30) days. Accordingly, Defendants' Motion to Dismiss and for Summary Judgment is granted as to the Martin property.

### 2. Equitable Estoppel is not Appropriate

■ Alternatively, Plaintiff claims that Defendants should be equitably estopped from asserting its statute of limitations defense. *See* Pl.'s Resp. Br. at 9–11. Plaintiff contends that Defendants created their own "procedural obstacle to being sued under the Telecommunications Act ... by failing to take action." *Id.* at 10. Plaintiff's own admission defeats this assertion.

Plaintiff admits that the parties were engaged in "ongoing discussions, negotiations, work sessions, and public hearings" regarding the Park property. Aside from Plaintiff's conclusory allegation that these negotiations and communications were conducted in bad faith, there has been no indication of such actions on the part of Defendants. Plaintiff claims that "if Defendants are permitted to avoid court action based on the 30–day limitation period, it will be rewarded for stringing Plaintiff along and delaying a decision on the Park site; it will be rewarded from its denial of Plaintiff's proposal to build a tower on the Martin site." *Id.* Plaintiff has not produced evidence supporting this contention. Plaintiff produced no evidence from which the Court could find a genuine issue of material fact as to the issue of whether Defendants were "stringing Plaintiff along" with regard to the Park property in an effort to render any suit by Plaintiff concerning the Martin property untimely.

Plaintiff's citation to *Industrial Communications and Elec., Inc. v. Town of Falmouth,* 1999 WL 33117159, *3 (D.Me.1999), *Ott v. Midland–Ross Corp.,* 523 F.2d 1367, 1370 (6th Cir.1975), and *Virginia Metronet, Inc. v. Board of Supervisors of James City County,* 984 F.Supp. 966, 973 n. 9 (E.D.Va.1998) are inapposite.

As to *Industrial Communications,* the footnote Plaintiff cites merely stands for the proposition that "[a] state or municipal government entity may not indefinitely postpone judicial review of its denial of an application otherwise subject to the Act by failing to issue a written decision." 1999 WL 33117159 at *3 n. 3. Similarly, *Ott* recites the principle that "no man may take advantage of his own wrong" to prevent a defendant whose actions have induced a plaintiff to delay filing a suit until after the running of the limitation period from asserting the statute of limitations as a defense to the action. 523 F.2d at 1370. Plaintiff argues that the City attempted to "indefinitely postpone" judicial review of its Martin decision by failing to issue a written opinion on the Park property and

that Defendants presently intend to take advantage of their own wrong by asserting the statute of limitations defense. However, Plaintiff has not demonstrated that the City's intention were as such.

*Virginia Metronet* involved, *inter alia*, a dispute as to whether the municipal defendant had provided written notice of its decision to deny plaintiff's special use application to construct an telecommunications tower on property located within the municipality's boundaries. 984 F.Supp. 966. The municipality argued, but eventually abandoned the idea, that its minutes constituted written notice under the Act. *Id.* at 972.

Alternatively, the municipality argued that a letter written by one of its employees explaining the reasons for denial fulfilled the written notice requirement. Because the letter written by the employee was created six days after suit had been filed in federal court, the court concluded that the municipality had not complied with the Act. In a footnote, the court also noted that "the letter was created thirty four days after the application was denied." 984 F.Supp. 966, 973 n. 9. The Court continued: "As [the Act] requires that any challenge to a decision be brought within thirty days, allowing Defendant to wait until the limitations period has expired to provide reasons for their action is to effectively preclude review of those decisions, contrary to Congressional intent." *Id.*

The Court notes that the *Virginia Metronet* court incorrectly assumed that the "final action" triggering the statute of limitations was the denial of the application itself. But as the court explained in *Laurence Wolf Capital Mgmt. Trust*, "under the Act, 'there can be no final action by the local permitting body until there is a written decision.'" 176 F.Supp.2d at 727. Under the Act, it is impossible for a municipality to "wait until the limitations peri-

od has expired to provide reasons for their action" because the statute of limitations cannot begin to run *until* there has been written notice of the reasons for denial of a special use permit. *See id.* (Emphasis added). There is no opportunity for a municipal entity to deny an aggrieved party her day in court by waiting more than thirty (30) days before issuing a written decision explaining the reasons for denying a request.

This Court determines that it cannot conclude that the City created a procedural bar to judicial review of its decision regarding the Martin property. In *Virginia Metronet*, the court determined that the municipality's *post hoc* rationalization of its denial of the special use permit was an attempt to preclude review of its decision, contrary to Congressional intent. Here, Defendants gave written notice of the denial of Plaintiff's application as to the Martin property on April 9, 2001. Although Defendants waited until June of 2001 to deny Plaintiff's special use application as to the Park property, Plaintiff has not submitted evidence demonstrating a triable issue of material fact as to whether Defendants did so in an effort to thwart judicial review of their decision on the Martin property.

Importantly, Plaintiff has submitted no evidence demonstrating that Defendants either expressly or impliedly represented to Plaintiff that the City would consider and/or grant a special use application as to the Park property in exchange for Plaintiff's agreement not to file suit based on the City's denial of the special use application of the Martin property. It was incumbent upon Plaintiff to preserve its rights by, for example, filing suit within 30 days of the written notice and requesting a stay of proceedings pending the outcome of the Park application. Plaintiff did not preserve its rights in any way and has not

presented sufficient evidence that the City was "stringing Plaintiff along and delaying a decision on the Park site" to avoid the 30–day limitations period.

### 3. Equitable Tolling is not Appropriate

■ Finally, Plaintiff argues that even assuming that Plaintiff did not have enforceable rights to lease a portion of the Park property, "the City's actions in continuing discussions with VoiceStream and holding a work session and public hearings on the park site equitably tolled the statute of limitations with regard to the Martin site." Pl.'s Resp. Br. at 16. This Court disagrees.

The Sixth Circuit has outlined the considerations a court must analyze when determining whether equitable tolling of a statute of limitations is appropriate in *Andrews v. Orr*, 851 F.2d 146 (6th Cir.1988). According to *Andrews,* there are five factors to consider in this regard: (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim. *Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.,* 209 F.3d 552, 561 (6th Cir.2000). When considering these factors, prejudice may only be considered if other factors of the test are met and therefore can only weigh in the government's favor. *Andrews,* 851 F.2d at 151.

Here, Plaintiff has not argued that it lacked notice of the filing requirement, and, as stated earlier, Plaintiff did nothing to preserve its rights as to the Martin property after the application for a special use permit had been denied. Plaintiff's equitable tolling argument has no merit. The Court GRANTS Defendants' Motion to Dismiss and for Summary Judgment as to the Martin property.

### B. Plaintiff has no Interest in the Park Property

■ Citing *Sprint Spectrum, L.P. v. City of Woburn,* 8 F.Supp.2d 118 (D.Mass. 1998), Defendants argue that Plaintiff does not have a property interest in the Park property and therefore does not have standing to bring a claim against the City. *Id.* at 6–8. This Court agrees.

Plaintiff asserts that it has standing to sue under the Act because it "was adversely affected by the City's refusal to grant the request to construct a tower *in the Search Ring." See* Pl.'s Resp. Br. at 11 (emphasis added). In so arguing, Plaintiff attempts to consolidate the special use applications of the Martin and Park properties. As explained above, however, the Martin and Park properties were separate considerations. Accordingly, Plaintiff must demonstrate that it has standing to bring suit to redress the City's denial of the special use permit for the Park property. *See, e.g., Sprint Spectrum,* 8 F.Supp.2d at 120.

Plaintiff argues that the Act does not require Plaintiff to have an interest in the Park property but merely requires that Plaintiff be adversely affected. *See* Pl.'s Resp. Br. at 12. Plaintiff is correct; the Act does not so require. Notwithstanding the undeniable fact that Plaintiff was adversely affected by the City's actions, however, *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), mandates that a court consider standing *sua sponte* in all cases. *See Boeing Co. v. Van Gemert,* 444 U.S. 472, 488 n. 4, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980); *S.E.C. v. Basic Energy and Affiliated Res., Inc.,* 273 F.3d 657, 665 (6th Cir.2001). A consideration thereof indi-

cates that Plaintiff's Complaint must be dismissed as to the Park property, as well.

To maintain standing in federal court, a plaintiff must have suffered actual (as opposed to hypothetical) "injury in fact." A plaintiff must also demonstrate a causal connection between the injury and the conduct complained of. Finally, the plaintiff must show that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130. Plaintiff's suit as to the Park property, though timely filed, must be dismissed because VoiceStream cannot show that a ruling in its favor would redress Plaintiff's claimed injuries.

In *Sprint Spectrum*, the plaintiff obtained a written agreement to execute a license/lease of water tanks owned by the City of Woburn as a site for plaintiff's antennae arrays. The agreement had been signed by the Mayor of the defendant city and was contingent upon the plaintiff successfully obtaining the special permit required by the city's zoning ordinance. The plaintiff's special permit application was denied. The Mayor notified plaintiff that their agreement had been canceled. The plaintiff filed suit in federal court, claiming that the denial violated the Act. Defendants claimed, *inter alia*, that the plaintiff lacked standing to challenge the action taken.

In deciding that the plaintiff lacked standing, the court acknowledged its power to redress the denial of a special use permit, but recognized that it had no authority "to order the lease, an underlying prerequisite to the issuance of the special permit." 8 F.Supp.2d at 122. The court opined that without this ability, any outcome that favored the plaintiff would not effectively redress its issue. *Id.* That is, a determination that the special use permit was improperly denied would not fully redress the plaintiff's concerns because the issuance of a special use permit would be futile absent a lease agreement between the plaintiff and the defendants as to the property at issue. Because the plaintiff in *Sprint Spectrum* had no interest in the property underlying plaintiff's request for a special use permit, the court concluded that the plaintiff lacked standing.

Plaintiff argues that under Michigan law, Plaintiff has an enforceable interest in the Park site. *See* Pl.'s Resp. Br. at 15. Relying on *Opdyke Inv. Co. v. Norris Grain Co.*, 413 Mich. 354, 320 N.W.2d 836 (1982), Plaintiff claims that this Court has authority to require the City to lease the Park property to Plaintiff because "all material terms of the lease were agreed upon by the parties." *See* Pl.'s Resp. Br. at 16. Notwithstanding these arguments, this Court concludes that it also lacks the power to order Defendants to enter into a lease agreement with Plaintiff.

From the fall of 2000 until May of 2001, the parties held limited exploratory discussions concerning the possibility of placing the tower on the Park property. *See* Defs.' Br. at 2. According to Defendants, all discussions were held "subject to the City Council approving the transfer of a property interest to Plaintiff." *Id.* As stated earlier, on November 30, 2000, Nicholas G. Banda, Director of Planning and Business Resource Development for the City of Southfield, typed and sent a letter to Jonathan R. Crane, the attorney that represented VoiceStream in the proceedings before the City of Southfield. The letter informed Mr. Crane of the terms the City would agree to if VoiceStream were to locate its proposed tower on the Park property: "The rent structure would be as follows: Fifty Thousand Dollars ($50,000) up-front, with a yearly rental of $8,700 for years one through five; $9,000 for years six through ten; $11,000 years eleven through fifteen; $12,000 years sixteen through twenty and $13,5000

years twenty one through twenty five." *See* Pl.'s Resp. Br. at Ex. 4. Because of the costs associated with the Park property and the deed restriction, VoiceStream declined to pursue the property at that time. *See* Defs.' Resp. Br. at Ex. 10; Pl.'s Br. at 5–6.

After the City indicated its intent to deny the Martin application on February 26, 2001, VoiceStream continued to inquire about the Park property as a location for its antenna. According to Plaintiff, "[t]he parties entered into meaningful and good faith negotiations to lease the Park property." *See* Aff. of Jonathan Crane at ¶ 4. Plaintiff argues that these negotiations ended with a contract whereby "VoiceStream agreed to construct a multi-user monopole in the Park, and the City agreed to eliminate the $50,000 one-time payment." *Id.* Plaintiff also claims that Defendants assured Plaintiff that the deed restriction disallowing placement of the tower on the property would be waived.

It is undisputed that no writing signed by Defendants exists to support Plaintiff's allegations, as is normally required by the statute of frauds. *See* MICH COMP. LAWS §§ 566.106, 566.108. Plaintiff argues, however, that the November 30, 2000 letter is "evidence of the parties' agreement." *Id.* at 16. This Court disagrees.

Whether a purported contract is barred by the statute of frauds is a matter of law to be decided by the Court. *Zander v. Ogihara Corp.*, 213 Mich.App. 438, 441, 540 N.W.2d 702 (1995). In the instant case, the November 30, 2000 letter predates the alleged agreement entered into between the parties subsequent to February 26, 2001, and therefore cannot be the culmination of the "meaningful and good faith negotiations." Plaintiff admits that it believed the prices in the letter were too excessive and, therefore, decided to pursue the Martin property. *See* Pl.'s Resp. Br. at 13. To date, there is no evidence that

Plaintiff has accepted the terms of the offer contained within the November 30, 2000 letter. Second, the content of the November 30, 2000 letter is materially different from that professed to be the post-February 26, 2001 agreement; it states that VoiceStream would pay the $50,000 up front while the alleged agreement entered into after February 26, 2001 did not require the payment. For these reasons, this Court concludes that the agreement allegedly entered into after the February 26, 2001 denial of the Martin application violates the statute of frauds.

*Opdyke* is not to the contrary. *Opdyke* involved an action against a municipality for breach of contract to jointly develop a sports arena to be used primarily by a local professional sports team (the Detroit Red Wings). The municipal defendant moved for summary disposition, claiming that no writing existed evidencing the alleged agreement. The Oakland County Circuit Court found for defendant, and the Court of Appeals affirmed. The Michigan Supreme Court reversed, holding that the sworn complaint, affidavits and other documentary evidence raised a question of fact whether the parties intended to agree and in fact agreed to a binding contract.

The Michigan Supreme Court based its decision on the presence of a "Letter of Intent," which plaintiff argued contained the essential terms of the alleged contract. While the Court of Appeals concluded that the Letter of Intent was "not intended to be a binding contract but operated only as an unenforceable agreement to agree," the Michigan Supreme Court disagreed. Instead, the court noted that "[a] contract to make a subsequent contract is not per se unenforceable; in fact, it may be just as valid as any other contract." 413 Mich. at 359, 320 N.W.2d at 838.

Recognizing the Michigan Supreme Court's admonishment against scrutinizing

writings to ascertain that parties' intent, *see id.* 413 Mich. at 362, 320 N.W.2d at 839, this Court notes the obvious reasons why the November 30, 2000 letter does not constitute a contract to make a subsequent contract. As mentioned previously, the contract allegedly agreed to differs materially from that which the November 30, 2000 offers, *i.e.,* a required payment of $50,000 is allegedly waived by the subsequent contract. Further, unlike the Letter of Intent in *Opdyke,* the November 30, 2000 letter in this case does not appear to have "left certain matters to be negotiated in the future." *See id.* To the contrary, the November 30, 2000 letter expressly states that its purpose was to inform VoiceStream of "the terms [the City] would agree to if [VoiceStream] were to locate [its] proposed Cellular Tower on [the City's] public parkland at Robbie Gage Park." *See* Pl.'s Br. at Ex. 2. ·

The November 30, 2000 letter is evidence that negotiations were underway and potentially ongoing. The letter does not, however, unequivocally delineate the terms of a contract capable of enforcement. Nor can the November 30, 2000 letter be considered a note or memorandum to satisfy the statute of frauds because the terms of the writing irrefutably differ from the agreement allegedly entered into subsequent to the February 26, 2001 denial of the Martin application. *Cf. Opdyke,* 413 Mich. at 366, 320 N.W.2d at 841.

Plaintiff argues that "the fact that the City held a work session, placed the matter on the agenda for a public meeting and provided notice to the public of the meeting ... demonstrates without question that the City recognized that VoiceStream has an interest in the Park site." *See* Pl.'s Resp. Br. at 16. Plaintiff continues by arguing that if it had no interest in the Park property, "the matter would never have been placed on the agenda [for the May 23, 2001 City Council meeting] in the first place." The Court finds no issue of fact regarding whether the progression of events outlined by Plaintiff signified Defendants' acknowledgment that Plaintiff had a property interest in the Park site. The letter was a part of exploratory discussions that "did not result in the required City Council action needed to grant Plaintiff an interest in the Park property." *See* Defs.' Reply Br. at 3 (emphasis in original); *see Gedvick v. Hill,* 333 Mich. 689, 695, 53 N.W.2d 583 (1952) (finding that an agreement to sell property, though partially memorialized in a writing, was never reached because the writing was not intended to be a contract).

Finally, as Defendants argue, Plaintiff's claim as to the Park property must fail because "even if City administrative officials had indicated to Plaintiff that the City would grant an interest in the Park property, the law in Michigan would prohibit Plaintiff from binding the City based upon the representations of administrative officials." *See* Defs.' Reply Br. at 3. Section 4.11 of the City of Southfield Charter authorizes the City Council to provide for the leasing of City-owned property. No other entity or person is granted this authority. As in *Sprint Spectrum,* therefore, any alleged lease agreement between VoiceStream and an individual or entity other than the City Council would be void. *See Willoughby v. Village of Dexter,* 709 F.Supp. 781, 787 (E.D.Mich.1989); *see also Johnson v. City of Menominee,* 173 Mich. App. 690, 434 N.W.2d 211 (1988) ("Persons dealing with a municipal corporation through one of its officers must at their peril take notice of the authority of the particular officer to bind the corporation ... If the officer's act is beyond the limits of his or her authority, the municipality is not bound.").

Plaintiff has produced no lease signed or authorized by the members of the City Council. For this reason, a ruling in favor of Plaintiff would not redress its primary concern. Accordingly, this Court finds that Plaintiff lacks standing to challenge the City's denial of the special use permit as to the Park property. Defendants' Motion to Dismiss and for Summary Judgment is GRANTED as to the Park property.[1]

## IV. CONCLUSION

The City retained authority to deny the special use applications of the Martin and Park properties at any time. The City did so as to the Martin property on April 9, 2001 and as to the Park property on June 4, 2001. Plaintiff had thirty-days from April 9, 2001 to file its claim based on the denial of the application for the Martin property. It did not do so. Plaintiff's suit as to the Martin property is untimely and must be dismissed. As to the Park property, Plaintiff lacks standing to sue over the City's denial of a special use permit. For these reasons, Defendants' Motion to Dismiss and for Summary Judgment is **GRANTED**.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss and for Summary Judgment (**Docket Numbers 13–1 & 13–2, filed January 7, 2001**) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (**Docket # 26, filed January 7, 2001**) is **DENIED**.

---

[1] Because Plaintiff lacks standing as to the Park property, its § 1983 claims are also not cognizable.