**OMNIPOINT COMMUNICATIONS ENTERPRISES, L.P.,**
Plaintiff,

v.

**TOWNSHIP OF NETHER PROVIDENCE,**
Defendant.

**No. CIV.A. 99–3974.**

United States District Court,
E.D. Pennsylvania.

Nov. 7, 2002.

Rudolph Garcia, Saul, Ewing, Remick & Saul, Philadelphia, PA, Elizabeth E. Utz, Elizabeth Utz Witmer, Saul, Ewing, Remick and Saul, Berwyn, PA, for Plaintiff.

Daniel J. Dugan, Spector, Gadon and Rosen, P.C., Philadelphia, PA, for Defendant.

## MEMORANDUM

ROBRENO, District Judge.

## I. INTRODUCTION

Omnipoint is a provider of wireless communications between portable telephone customers. In order to provide the service, Omnipoint must arrange for "cell sites" that connect cellular telephone signals into ordinary telephone lines in a honeycomb pattern, which enables the areas served by different cell sites to over-lap. Omnipoint contends that there is a gap in coverage, i.e., an area where Omnipoint's signal will not reach its customers, along Pennsylvania Route 252, a major north-south road. To improve its service, Omnipoint wishes to place an antenna hidden inside a flagpole located at the Municipal Building in the Township of Nether Providence, Pennsylvania ("Township").

Because of the Township's zoning ordinance, there is, however, no private land within the Township available for development as sought by Omnipoint.[1] There are, however, several parcels owned by the Township that could serve as adequate cell sites for Omnipoint's antenna. Omnipoint sought to lease one of these properties, the Municipal Building, to serve as a cell site. The Township refused the offer.

Omnipoint contends that the Township's zoning scheme, together with the Township's refusal to lease Township property to Omnipoint constitutes a violation of the Telecommunications Act of 1996. The TCA, in essence, enjoins municipal bodies from enacting land regulations that "have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II). Omnipoint claims that, under the TCA, it is entitled to damages, and to an order of the court directing the Township to lease the Municipal Building to Omnipoint to be used as a cell site for its communications facility.[2] The

---

1. Nether Providence's Zoning Ordinance ("zoning ordinance") does not allow wireless service providers to locate communications facilities in the R–Residential districts, but allows such facilities in the C–Commercial and P–O Professional Office districts only by special exception, and, prior to June 1999, by conditional use. See Nether Providence, Pa., Zoning Code § 300–138.1. (1999); Nether Providence, Pa., Zoning Code § 300.102(H) (1997). The only districts not subject to such restrictions are the I–Industrial districts and municipal property. Nether Providence, Pa., Zoning Code § 300–138.1.

2. Omnipoint is no longer in a position to claim that the Municipal Building is the only site that will allow it to resolve its coverage gap. After filing this lawsuit, Omnipoint managed to enter into a lease with a private landowner of a commercial property. The Nether Providence Zoning Board has denied Omnipoint a variance that would enable it to build a cell tower, however, and Omnipoint has filed a second lawsuit appealing the deni-

Township has moved for summary judgment[3] arguing that its conduct does not implicate the TCA. For the reasons that follow, the court agrees that summary judgment in favor of the Township is proper.

## II. DISCUSSION

The Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7), provides, in pertinent part, as follows:

**Preservation of local zoning authority**

**(A) General Authority**

Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

**(B) Limitations**

(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof-

\*    \*    \*    \*    \*    \*

(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

\*    \*    \*    \*    \*    \*

(iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

\*    \*    \*    \*    \*    \*

(v) Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction.

47 U.S.C. § 332(c)(7).

Omnipoint argues that the restrictive zoning ordinance, coupled with the Township's refusal to lease unrestricted municipal property to Omnipoint, renders Omnipoint unable to fill a gap in its coverage, and therefore has "the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II). Thus, Omnipoint contends that the TCA

al of that variance. The lawsuit is pending before this court. *See Omnipoint Communications Enters., L.P. v. Township of Nether Providence*, No. 01–CV–3084 (E.D. Pa. filed June 20, 2001); *see also infra* note 7 (discussing factual background to Omnipoint's case against the zoning board).

**3.** Federal Rule of Civil Procedure 56(c) is designed to secure a just, speedy and inexpensive determination of cases before they proceed to trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the

moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is genuine only if the evidence is such that a reasonable jury could find for the non-moving party. *Id.* at 251–52, 106 S.Ct. 2505. In making this determination, a court must draw all reasonable inferences in favor of the non-movant. *See Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. denied*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). Thus, summary judgment should be granted only if no reasonable trier of fact could find for the non-moving party. *See id.; Radich v. Goode*, 886 F.2d 1391, 1395 (3d Cir.1989).

obligates the Township to lease its own municipal property to Omnipoint, and that the court may direct the Township to enter into such a lease. The Township counters that a municipality that declines to negotiate and enter into a lease with a telecommunications provider carrier does not violate the TCA, even· when the applicable zoning ordinance leaves available no property where the tower can be built without obtaining a variance.

■■■ The issue presented is one of statutory construction.[4] "The first step in interpreting a statute is to determine 'whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *Marshak v. Treadwell*, 240 F.3d 184, 192 (3d Cir.2001) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)). A plain meaning approach dictates that the words used in a statute be accorded their ordinary meaning, *see Elliot Coal Mining Co., Inc. v. Dir., Off. of Workers' Comp. Programs*, 17 F.3d 616, 629 (3d Cir.1994), and their dic-tionary meaning. *See Algrant v. Evergreen Valley Nurseries Ltd. P'Ship.*, 126 F.3d 178, 188 (3d Cir.1997). If application of the clear meaning rule discloses ambiguity, the court may resort to legislative history. *But see Conroy v. Aniskoff*, 507 U.S. 511, 519, 113 S.Ct. 1562, 123 L.Ed.2d 229 (1993) (describing the use of legislative history as "the equivalent of entering a crowded cocktail party and looking over the heads of guests ̂for one's friends") (Scalia, J., concurring). When legislative history does not resolve ambiguity, the court may investigate other aids to construction, including the "object and policy" of the statute. *See Richards v. United States*, 369 U.S. 1, 10–11, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). In this case, however, the court need look no further than the plain meaning and legislative history of the statute to locate the answer.

■■ First, a plain meaning reading 47 U.S.C. § 332(c)(7) reveals that a municipality's refusal to lease its property does not fall within the purview of the TCA. Most obviously, the section of the TCA

---

4. To date, the two courts that have addressed the issue of whether a court may force a municipality into a lease with a wireless service provider have done so in the context of an inquiry into standing, rather than in terms of an interpretation of the TCA. *See Omnipoint Holdings, Inc. v. City of Southfield*, 203 F.Supp.2d 804, 814–18 (E.D.Mich.2002); *Sprint Spectrum, L.P. v. City of Woburn*, 8 F.Supp.2d 118, 120 (D.Mass.1998). Both cases involved wireless providers who applied for, and were denied, special use permits for municipal land that they did not yet own.

In both cases, the courts concluded that the wireless provider lacked standing to bring a claim for improper denial of the permit, because the provider had no ownership or authorization to use the property in question, and the court was "at a loss as to how it could properly . . . order the City to execute a lease of town property." *Sprint Spectrum*, 8 F.Supp.2d at 121–22; *accord Omnipoint Holdings*, 203 F.Supp.2d at 814–16. Noting that the "court is empowered to redress the denial of the special permit, but is not empowered to order the lease," the court in *Sprint Spectrum* found that the provider lacked standing because ordering the city to issue the special permit would not fully redress the provider's alleged injury. *Sprint Spectrum*, 8 F.Supp.2d at 122.

The present case presents a somewhat different issue. Omnipoint is not appealing the denial of a special use permit for land that it does not own, but rather is asserting that the TCA gives it the enforceable right to municipal land when the combination of a restrictive zoning ordinance and the municipality's refusal to lease has the effect of rendering it unable to provide wireless services. To the extent that the combination of the ordinance and the refusal to lease may violate the TCA, it is clear that a court order forcing a lease would completely redress Omnipoint's alleged injuries. The question here, therefore, is whether the Township had a duty to negotiate and enter into such a lease.

relevant here is entitled "Preservation of local *zoning* authority." 47 U.S.C. § 332(c)(7) (emphasis supplied). Black's Law Dictionary describes zoning as "[t]he division of a city by *legislative regulation* into districts and the prescription and application in each district of regulations . . . prescribing use to which buildings within designated districts may be put." Black's Law Dictionary 1793 (rev. 4th ed.1968) (emphasis supplied). Unsurprisingly, therefore, the language of 47 U.S.C. § 332(c)(7)(B)(i) refers only to legislative "*regulation* of the placement, construction, and modification of personal wireless service facilities. . . ." 47 U.S.C. § 332(c)(7)(B)(i) (emphasis supplied). "Regulation" is "a rule or order prescribed for management or government . . . [or a] Rule of order prescribed by superior or competent authority relating to action of those under its control." Black's Law Dictionary 1451.

By contrast, a lease is "[a]ny agreement which gives rise to relationship of landlord and tenant . . . [or a] Contract for exclusive possession of lands or tenements for a definite period." Black's Law Dictionary 1035. Far from being a "rule of order" imposed by a legislature from above, a lease requires a mutually acceptable agreement between parties entering a contract. As such, a lease cannot constitute a form of "zoning" or "regulation" governed by 47 U.S.C. § 332(c)(7)(B)(i)(II).[5]

Second, the TCA's legislative history is consistent with this result. It is clear that the unequivocal focus of the legislation is on zoning practices, and on preserving local authority over land regulation. 47 U.S.C. § 332(c)(7) was enacted out of Congress' "recogni[tion] that there are legitimate State and local concerns involved in regulating the siting of [telecommunications] facilities. . . ." *Omnipoint Corp. v. Zoning Hearing Bd. of Pine Grove Township*, 181 F.3d 403, 407 (3d Cir.1999) (quoting H.R. Rep. 104–204, at 94–95 (1996), *reprinted in* 1996 U.S.S.C.C.A.N. 10, 61.)

**5.** Against this background, Omnipoint's assertion that the TCA required the Township to support its refusal to lease with substantial evidence on the record is also unavailing. 47 U.S.C. § 332(c)(7)(B)(iii) states, in relevant part, that "[a]ny decision by a . . . local government . . . to deny a request to place, construct, or modify personal wireless services shall be in writing and supported by substantial evidence contained in a written record."

Although the provision refers to "any decision," and thus potentially could refer to a broad range of policymaking choices on the part of the Township, the context afforded by the title and other provisions of 47 U.S.C. § 332(c)(7), as described above, limits the scope of this phrase to zoning decisions.

Moreover, the language of this paragraph strongly suggests that Congress intended for it to apply in the zoning context only. The paragraph refers to a "request to place, construct, or modify" and nowhere mentions a request to "lease." Because zoning is by definition "[t]he division of a city by legislative regulation into districts and the prescription and application in each district of regulations

. . . prescribing use to which buildings within designated districts may be put," Black's Law Dictionary 1793, to interpret "a request to place" as a request to enter into a lease agreement produces a tortured reading that the court does not endorse.

Accordingly, the court finds that the TCA did not require Nether Providence to support its refusal to lease with substantial evidence on the record, and denies Omnipoint's motion for summary judgment based on this argument.

In addition, at oral argument, Omnipoint asserted for the first time that it was entitled to relief under a different provision of the TCA, 47 U.S.C. § 253. This section provides that "[n]o State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a). Because a refusal to lease is not a state or local statute or regulation or legal requirement, the court concludes that this provision does not apply.

Rejecting a House proposal that the FCC alone should regulate the siting of wireless telephone transmitters, Congress enacted this provision to "prevent[ ] . . . preemption of local and State land use decisions [by the FCC] and preserve[ ] the authority of State and local governments over zoning and land use matters except in . . . *limited* circumstances. . . ." *Omnipoint Communications, Inc. v. City of Scranton,* 36 F.Supp.2d 222, 228 (M.D.Pa.1999) (quoting H.R. Conf. Rep. No. 104–458, at 207–08 (1996), *reprinted in* 1996 U.S.S.C.C.A.N. 10, 222) (emphasis supplied). To put it another way, in the realm of zoning, 47 U.S.C. § 332(c)(7) reflects "a deliberate compromise between two competing aims-to facilitate nationally the growth of wireless telephone service and to maintain substantial local control over siting of towers." *Town of Amherst, N.H. v. Omnipoint Communications Enters., Inc.,* 173 F.3d 9, 13 (1st Cir.1999).[6]

Therefore, given the plain meaning and legislative history of 47 U.S.C. § 332(c)(7), the court concludes that, because the Township's refusal to lease its own property does not constitute an exercise of zoning or regulatory powers, the Township had no duty under the TCA to negotiate or ultimately to lease portions of municipal property to Omnipoint for the purpose of installing an antenna.

This does not mean, however, that Omnipoint is left without a remedy based on the alleged violations of the TCA by the Township's zoning scheme. Although Omnipoint's complaint centered on the combination of the Township's restrictive zoning ordinance and its refusal to lease its own property, it appears clear that, in actuality, Omnipoint's underlying quarrel with the Township is over the zoning ordinance. Because the TCA does govern challenges to zoning ordinances, Omnipoint may, of course, purchase or lease suitable property from a private entity, apply for a variance or special exception from the zoning ordinance, and, should the zoning board deny the request, Omnipoint may seek relief in court for any concomitant violation of the TCA involved in that zoning decision.[7] *See Pine Grove,* 181 F.3d at 405–06.

## III. CONCLUSION

For the foregoing reasons, the court grants summary judgment in favor of the

---

**6.** Even in the face of the plain meaning of the TCA and its legislative history, Omnipoint nonetheless insists that this court should exercise its equitable power, as no court seeking to remedy violations of the TCA has ever done, to order a lease to neutralize the combination of a zoning ordinance and a refusal to lease presented by the facts of this case. In support of its position, Omnipoint points to a single statement by the Third Circuit that "[i]njunctions are proper forms of relief under [47 U.S.C.] § 332(c)(7)(B)(v)." *Pine Grove,* 181 F.3d at 410.

The facts and disposition of the *Pine Grove* case belie the sweep and generality of this language, because they present only a typical situation in which a court issues an injunction against a zoning board that has violated the TCA by denying a wireless provider an exception to build a tower on property that the provider has already leased. *See id.* at 405–

406, 409–410. By contrast, the instant case presents a distinguishable situation, in which a wireless provider seeks a lease, not a permit, from a municipality, and not a zoning board or other regulatory authority. Consequently, Omnipoint's reference to *Pine Grove* offers no support for its claim.

**7.** In fact, Omnipoint has already begun this process. Having entered into a lease that would allow it to remedy its coverage gap by building a facility on commercial property, Omnipoint applied to the Nether Providence Zoning Board for a special exception and variances. When the Board denied Omnipoint's application, Omnipoint filed suit in this court, *Omnipoint Communications Enters., L.P. v. Township of Nether Providence,* No. 01–CV–3084, (E.D. Pa. filed June 20, 2001)(placed in suspense pending decision on these motions).

Township of Nether Providence on all claims.[8] An appropriate order follows.

### ORDER

AND NOW, this 7th day of November, 2002, it is **HEREBY ORDERED** that plaintiff's motion for summary judgment (doc. no. 13) is **DENIED**, and defendant's motion for summary judgment (doc. no. 15) is **GRANTED**.

**AND IT IS SO ORDERED.**

---

8. As derivatives of its TCA claim against the Township, Omnipoint has alleged violations of 42 U.S.C. § 1983 and the Pennsylvania Sunshine Act, 65 Pa. Cons.Stat. Ann. § 701 *et seq*. Because the court has found no violation of the TCA, these derivative claims are dismissed as moot.